## MARTHA LAFFERTY v. THE PEOPLE'S SAVINGS BANK.

[See 70 Mich. ——.]

*Estates of deceased persons—Will—Liability of estate of testator for payment of debts—Residuary legatee—Bond—Remedy of creditors.*

| | |
|---|---|
| 76 | 35 |
| 95 | 448 |
| 96 | 398 |
| 76 | 35 |
| 102 | 517 |
| 76 | 35 |
| d121 | 464 |
| 76 | 35 |
| a122 | 442 |
| f122 | 443 |
| f122 | 444 |
| 76 | 35 |
| 134 | ⁵501 |
| 76 | 35 |
| 153 | ¹⁰135 |

1. Where a testator gives direction to pay debts, followed by a gift of the *residue* of his real *and* personal estate, the intention is indicated that the debts are to be paid out of the *real* as well as *personal* estate, and they are charged upon *such* residue.

2. The statutes declaring that *all* of a testator's property shall be chargeable with the payment of *all* of his debts create an equitable lien in favor of creditors, which is not destroyed by the execution of the statutory bond by a residuary legatee, which becomes an additional security for such payment.

3. The statute (How. Stat. § 5836, as amended by Act No. 169, Laws of 18ʲ7), places the assets of the testator in the possession and under the control of the residuary legatee who has filed the required bond to pay debts and legacies, with the right of disposition so long as he remains executor.

4. The *title* of a residuary legatee is derived from the will of the testator, and is not *absolute*, but is held subject to the payment of the testator's debts; and by filing the required bond and by grant of letters testamentary such legatee, as executor, becomes invested with the right to take possession of the assets for that purpose, and may convert the real estate into money to enable him to pay said debts, without license from the probate court.

5. On the removal of a residuary legatee from the office of executor, the (title to the) property of the testator undisposed of reverts to the estate, and becomes vested in the administrator *de bonis non*.

6. The main difference between the administration of an estate by an executor who is a residuary legatee, and one who is not, is that in the *former* case no inventory is required, and sales of *both* real and personal property can be made without application to the probate court for a license, and the executor is less under the supervision of said court; but in *both* cases the duty to pay the debts of the testator remains, and is attached to the office of executor, which duty can be enforced in a proper way,—by the

probate court, where it has power to enforce obedience to its orders and decrees, and by the court of chancery, where the jurisdiction of the probate court is incomplete or insufficient.

7. The office of a residuary legatee, as executor, is not terminated on the filing and approval of the bond to pay debts and legacies, such action being a condition precedent to his right to receive letters testamentary, which are his authority to act at all in the administration of the estate.

8. A residuary legatee cannot be sued personally for a debt due from the testator, but only officially, as executor; nor can his individual property be taken in execution upon a judgment ag inst him as executor, at least until after the time for the payment of the debts has expired.

9. A residuary legatee who has qualified as executor may be removed by the probate court for failing to file a new bond, or for failure to comply with any lawful order or decree of that court.

10. Under the Michigan statutes, an estate is not regarded as administered until the assets have been collected and applied as required by law or the will of the testator, and until fully administered the probate court has jurisdiction in the matter of the proceedings.[1]

11. The statutory lien of creditors upon the assets of deceased persons has been recognized by this Court in *Hoffman v. Beard*, 32 Mich. 218; *Burns v. Berry*, 42 Id. 176; *Winegar v. New.and*, 44 Id. 367; *Pierce v. Holzer*, 65 Id. 264 (head-note 5).

12. The authority of an executor, who has given a bond as residuary legatee, to sell real estate, is derived from his letters testamentary and the force of the statute, and he must act officially, the same as if acting under a license from the probate court, and his *ind'vidual* deed will only convey the land subject to the equitable lien of creditors.

13. Without deciding certain points made by counsel for the defendant, it is suggested:

a—That if a probate court has jurisdiction to appoint an executor, the filing of a bond with but *one* surety will not render his acts void after the granting of letters testamentary, the defect being remediable under How. Stat. § 5864.

b—Ordinarily the duty of a probate judge requires him to fix the penalty of an executor's bond with reference to the *amount* of the *assets*, but in case of a residuary legatee it must be fixed with reference to the *amount* of the *debts* and *legacies*; and the amount of the *former* being unknown to the court, in the absence of notice to creditors to enable them to give such infor-

---

[1] See *Buss v. Buss Estate*, 75 Mich. 163.

mation, the fixing of said penalty must be a matter of guess-work with the court.

Appeal from Wayne.  (Gartner, J.)  Argued January 31, 1889.  Decided July 11, 1889.

Bill filed to quiet title.  Defendant appeals.  Decree reversed and bill dismissed, CAMPBELL, J., and SHERWOOD, C. J., dissenting.  The *facts,* and *points* of counsel, are stated in the opinions.

*Morgan E. Dowling,* for complainant.

*C. J. O'Flynn,* for defendant.

CHAMPLIN, J.  The bill of complaint was filed April 27, 1887, to quiet title to real estate situated in the city of Detroit.  The case was heard upon pleadings and proofs, and a decree rendered in favor of complainant, from which defendant appeals.

The bill alleges and the answer admits that one Olney Cook, in his life-time, and at the time of his death, was the owner in fee of the land; that Cook died August 13, 1876, leaving a last will, by which he disposed of his property in the following language:

"After all of my lawful debts are paid and discharged, the residue of all my estate, both real and personal, I give, devise, and bequeath to my beloved wife, Asenath Cook, and her heirs, forever."

He appointed his wife executrix.  This was in 1864.

In 1875 he added a codicil, the sole purpose of which was to appoint Royal C. Remick executor of his will jointly with his wife.

This will was admitted to probate on September 4, 1876, and administration was granted to Asenath Cook and Royal C. Remick, executors, and it was ordered—

"That upon their giving a bond in the penal sum of $10,000, with sufficient sureties, and the same being duly approved, letters testamentary do issue to them."

Royal C. Remick. declined in writing to act as executor, and thereupon, on the second day of October, 1876, Asenath Cook filed in the probate court a bond, with Royal C. Remick as surety, in the penal sum of $1,000, reciting that she had been appointed sole executrix of the will, and conditioned that she should pay all the debts and legacies of the testator, and perform all orders and decrees of the probate court by her to be performed in the premises. This bond was approved by Albert H. Wilkinson, judge of probate, on the second day of October, 1876, and ordered filed, and thereupon letters of administration with the will annexed were issued to Asenath Cook.

The approval of the bond was entirely *ex parte,* and without notice of any kind to defendant as a creditor of Olney Cook, and was not based upon any preliminary order other than that of September 4, 1876, requiring a bond in the penal sum of $10,000 with sufficient sureties.

On June 12, 1877, defendant filed a petition in the probate court, setting forth that it was a creditor of Olney Cook to the amount of nearly $15,000; that the bond of Asenath Cook was insufficient; and praying that she be required to file a new bond. On the ninth day of July, 1877, the petition was granted, and she was required by the probate court to file a new bond in the penal sum of $20,000, within ten days thereafter, which she did not do, and was removed from the office of executrix on July 21, 1877.

The time for the executrix to comply with the order of the court by filing a new bond expired on the nineteenth of July, 1877; and on the eighteenth day of July, 1877, she gave a warranty deed of the land described in the bill of complaint to S. Titus Parsons, reciting a consideration of

$4,000. This deed was recorded on the twenty-fifth day of October, 1877.

On November 15, 1877, S. Titus Parsons and wife executed and delivered a deed of the land to Martha Lafferty, reciting a consideration of $6,000. This deed was recorded on the seventeenth day of November, 1877. Complainant took possession of the real estate covered by her deed about January 1, 1878, and has ever since had sole possession of the same.

On the removal of Asenath Cook as executrix, Henry D. Barnard was appointed administrator *de bonis non*, and on the third of September, 1877, qualified as such, and letters of administration with the will annexed were issued to him. Commissioners on claims were appointed by the probate court on September 10, 1877, who allowed a claim in favor of defendant for $13,931. Their report was filed on the twenty-first of March, 1878, and affirmed.

July 2, 1879, the administrator petitioned for license to sell said real estate and other lands, which was granted on September 30, 1879. Such proceedings were had under said license that on the fifth day of March, 1880, the land in question was sold at administrator's sale, and bid off by Francis Palms, and the land conveyed to him. The report of sale was made to the probate court, April 5, 1880, and confirmed by the court on April 21, 1880.

The defendant is a corporation duly organized under the laws of Michigan, and on December 10, 1880, Francis Palms conveyed said land to it, and it now claims title through him. No steps have ever been taken by defendant to test the validity of its title, either at law or in equity.

The oral testimony introduced upon the trial proved that the sale by Asenath Cook to S. Titus Parsons pending the requirement to file a new bond was for the purpose of preventing any of the property in suit from being applied in payment of the debt of the testator to defendant, and as to

defendant was fraudulent and void. The complainant exchanged property she owned in Malden, Ontario, for this property. Her husband acted as her agent in the transaction, and dealt with S. Titus Parsons, who was a lawyer and the adviser of Mrs. Cook in the scheme to defraud the creditors of Olney Cook. Complainant claims that personally she had nothing whatever to do with the trade. Neither she nor her husband has ever lived upon the property, but they have rented it to other parties. She claims to be a *bona fide* purchaser from Parsons.

The complainant claims—

1. That Mrs. Cook, being the residuary legatee named in the will of Olney Cook, and having filed a residuary legatee's bond, which was approved by the judge of probate, became, by reason thereof, the absolute owner of all the real and personal estate of Olney Cook, with the right to deal with it and dispose of it in the same manner as any other property of which she was owner.

2. That such property is not in any way under the supervision, dictation, or management of the probate court, or any other court, as a trust fund, and she cannot be called upon to account for it, either in the probate court or in chancery, and that the only protection the creditors have is in the bond filed by her as residuary legatee.

Several decisions of this Court are cited in support of these propositions: *Hatheway v. Weeks*, 34 Mich. 237; *McElroy v. Hatheway*, 44 Id. 399 (6 N. W. Rep. 867); *Durfee v. Abbott*, 50 Id. 278, 479 (15 N. W. Rep. 454, 559).

In *Hatheway v. Weeks* the residuary legatee filed a bill in chancery to be relieved from liability on his residuary legatee's bond, on the ground of mistake in supposing that the assets were far greater than they proved to be, and prayed that the estate might be remitted to the ordinary course of administration. This Court held that it would open the door to grave abuses to grant the relief prayed; that the residuary legatee was not obliged to give this bond; and by giving it he obtained very decided advantages, which he

could have acquired in no other way. He had ample time to investigate and determine whether he would give this bond or not. Until it was approved and accepted by the probate court, it was subject to his control. Having given it, he is bound by the condition "to pay all the debts and legacies of the testator."

In the opinion in this case the distinction between the two courses of administration is pointed out. The whole is summed up as follows:

"The executor or administrator is a mere officer of the law; he has no personal interest in the property; his powers are all given him by law, and he is accountable for the due and proper execution of those powers; while the residuary legatee, upon giving the bond, becomes sole and absolute owner of the estate of the testator, both real, personal, and mixed, with all the rights and remedies of an absolute owner, and subject to none of the conditions, restrictions, or accountabilities of an executor."

In *McElroy v. Hatheway*, 44 Mich. 399 (6 N. W. Rep. 867), two opinions were written. The bill was filed by one of the sureties upon the residuary legatee's bond, and its purpose was to transfer the whole remedial jurisdiction over the settlement of the estate from the court of probate to the court of chancery, and to compel, by the authority of the latter court, the executor and residuary legatee and the co-sureties to discover and trace from the death of the testator until the present time all parts of the estate, and through a receiver to enforce an absolute surrender by the executor and legatee of the whole assets to the court, in order that it may assume to conduct the administration to final settlement.

Mr. Justice GRAVES, after stating the purpose of the bill as above, said:

"No such bill can be maintained. The court has no jurisdiction to override the title of a residuary legatee in the way and on the grounds set forth, and the complainant has mistaken his remedy, if he has any. There may be cases, no

doubt, when the court, proceeding in accordance with its own maxims, and keeping within the limits given to it in this State, would find some way for relieving the surety by hastening the principal, and preventing him from using his opportunity to oppress and defraud his surety."

Mr. Justice COOLEY, in concurring in dismissing the bill, said that—

"It was decided in *Hatheway v. Weeks*, 34 Mich. 237, that, when a residuary legatee had given bond to pay the debts and legacies of the testator, the property of the estate became his, and he was at liberty to deal with it as he might with any other property of which he was owner. The protection of creditors and legatees was in the bond, and their remedy to sue upon it with permission of the probate court, if payment was not made with reasonable diligence.   *   *   *   The only ground on which this can be distinguished from an ordinary case of suretyship is that here there is a specific fund received from the estate, which it became the duty of Hatheway to apply to the satisfaction of legacies, and which is charged with a trust to that end.   But this is wholly inconsistent with the views expressed in *Hatheway v. Weeks*, and with the position of the residuary legatee under the statute after he has given the bond which was given here. The property he receives does not stand apart from any he may otherwise own, and is not under the supervision, dictation, or management of the court of probate, or of any other court, as a trust fund.   It is a part of the legatee's general property, as much as any he has bought or produced by his labor. The other legatees are neither obliged to look to it for their satisfaction, nor can they follow it specifically, and prevent his doing with it whatever his interest may seem to dictate."

*Durfee v. Abbott,* 50 Mich. 278 (15 N. W. Rep. 454), was an action of debt brought upon a residuary legatee's bond to recover the amount of an alleged indebtedness of the testator to one Culver. The sole evidence of the indebtedness to Culver which was produced upon the trial consisted in an order of the judge of probate purporting to be an allowance of Culver's claim at a sum specified. The sole question decided was that the supposed allowance of the claim by the judge of probate was ineffectual, and the judgment based

upon it was erroneous. The reasons why it was ineffectual were—

1. That no proper notice of the proceedings to allow the claim was given to the principal and sureties in the legatee's bond.

2. That, in cases where the residuary legatee has given the statutory bond, the appointment of commissioners on claims is not essential, unless it may be when a claim is asserted which the executor disputes; that the settlement of claims is the personal affair of the executor and the claimants, to be disposed of in their own way, and at their own pleasure.

Mr. Justice COOLEY in his opinion says:

"Even the sureties could question them [his acts] only in case attempt was made to charge them personally upon his default in making payment. The giving of such a bond substantially completes the administration."

*Durfee v. Abbott,* 50 Mich. 479 (15 N. W. Rep. 559), was an action of debt upon a residuary legatee's bond brought by two legatees. The sureties defended upon the ground that the legatees each took the individual note of the executor for the amount of their legacies, payable in two years; thus extending the time of payment without consent of the sureties. In deciding the case Mr. Justice CAMPBELL said:

"The probate court has no power to extend the time for paying legacies when the residuary legatee gives bond to pay debts and legacies. Such a bond puts an end to the administration in its ordinary course, and the debts and legacies become personal charges against him."

*Wheeler v. Hatheway,* 54 Mich. 547 (20 N. W. Rep. 579), was *scire facias* upon a residuary legatee's bond to enforce payment of a legacy. Both parties brought error. The defendant brought error for excluding testimony upon cross-examination. The plaintiff claimed error in not being allowed interest on the legacy from the date of filing the residuary legatee's bond. This Court held that the interest should commence one year from that date, and it was said:

"Such would undoubtedly be the time when the legacy

would be payable, if the estate had been closed in the ordinary course of administration. In this case, however, the executor gave a residuary legatee's bond, which had the effect to close the administration of the estate from the approval and filing of the bond."

I have stated the questions which were involved in the foregoing decisions of this Court, and some of the reasoning upon which they were founded, for the purpose of calling attention to the fact that the points presented by this record for our determination have not been passed upon in those cases; and I shall expect to show that some of the expressions used in deciding them, if taken in their broadest sense, disconnected from the points in controversy, cannot be applied to the solution of the questions before us.

Passing for the present the question made as to the regularity and validity of the appointment of Mrs. Cook as executrix, I shall consider the questions presented by this record, as follows:

1. Does the filing of a residuary legatee's bond destroy and render nugatory the provisions of the statute, and in this case the last will of the testator, charging his estate with the payment of all his debts?

2. Does the filing of a residuary legatee's bond, and its approval by the judge of probate, close the administration proceedings absolutely, so that the probate court has no further jurisdiction over the executor and over the administration of the estate of the testator?

These questions involve the proper construction of the statutes relating to wills, and of those relating to the administration of the estates of deceased persons in the probate court.

Section 5785, How. Stat., authorizes every person of full age and sound mind to dispose of his or her estate by last will and testament in writing, and says:

"And all such estate not disposed of by the will shall descend as the estate of an intestate, being chargeable in *both* cases with the payment of all his debts."

Section 5813 provides that—

" All the estate of the testator, real and personal, shall be liable to be disposed of for the payment of his debts and the expenses of administering his estate."

Section 5814 provides:

" If the testator shall make provision by his will, or designate the estate to be appropriated for the payment of his debts,  *  *  *  they shall be paid according to the provisions of the will," etc.

Section 5816 provides that—

" The estate, real or personal, given by will to any devisees or legatees, shall be held liable to the payment of the debts," etc.

These provisions of the statute are as certain and positive as language can express, that the debts of the testator must be first paid before legatees are entitled to receive the legacies given by the will; and such debts are made a charge upon the estate of the testator. In this case the intent of the testator is plain that his debts shall be paid before the legatee is entitled to anything. The language of the will is:

" After all of my lawful debts are paid and discharged, the residue of all my estate, both real and personal, I give, devise, and bequeath to my beloved wife, Asenath Cook, and her heirs, forever."

The testator has excluded his residuary legatee from taking anything until there should be a residue after payment of the debts, and, the debts far exceeding the whole value of the estate, there was nothing for her to take as a residuary legatee. *Lyne's Estate*, L. R. 8 Eq. 482.

It is well-settled law that where a testator gives direction to pay debts, followed by a gift of the residue of the real and personal estate, the intention is indicated that the debts are to be paid out of the testator's real as well as personal estate, and they are charged upon such residue. *Cole v. Turner*, 4 Russ. 376; *Greville v. Browne*, 7 H. L. Cas. 689;

*Wheeler v. Howell,* 3 Kay & J. 198; *Gyett v. Williams,* 2 Johns. & H. 429; *In re Bellis' Trusts,* L. R. 5 Ch v. 504; *Bray v. Stevens,* 12 Id. 162; *In re Brooke,* 3 Id. 630; *Withers v. Kennedy,* 2 Mylne & K. 607; *Soames v. Robinson,* 1 Id. 500; *Shakels v. Richardson,* 2 Colly. 31.

The statutes above quoted are founded upon equitable principles, and declare that all the testator's property, real and personal, shall be chargeable with the payment of all his debts. The whole estate is therefore legal assets, to be administered as the law prescribes; and it is no longer necessary to go into chancery to subject real estate to the payment of debts, or to secure equality of distribution among specialty and other creditors. By the force of the statute an equitable lien is created in favor of creditors of the testator, and they have the right to have this lien enforced upon proper occasion in the proper tribunal. The bond required to be given by an executor, whether it be the bond required by section 5835 or by section 5836 of Howell's Statutes, *infra,* is not intended to destroy this equitable lien, but is an additional security to the creditors for the payment of their debts. The debts are made a charge upon the estate by statute, and the bonds are required in the procedure for administering the estate by the executors to secure the faithful performance of the trust arising from the appointment to and acceptance of the office.

Section 5835, How. Stat., enacts:

"Every executor, before he shall enter upon the execution of his trust, and before letters testamentary shall issue, shall give bond to the judge of probate in such reasonable sum as he may direct, with one or more sufficient sureties, with conditions as follows:

"1. To make and return to the probate court, within three months, a true and perfect inventory of all the goods, chattels, rights, credits, and estate of the deceased which shall come to his possession or knowledge, or to the possession of any other person for him.

"2. To administer, according to law and to the will of the

testator, all his goods, chattels, rights, credits, and estate which shall at any time come to his possession, or to the possession of any other person for him, and out of the same to pay and discharge all debts, legacies, and charges chargeable on the same, or such dividends thereon as shall be ordered and decreed by the probate court.

"3. To render a true and just account of his administration to the probate court within one year, and at any other time when required by such court.

"4. To perform all orders and decrees of the probate court by the executor to be performed in the premises."

Section 5836, as amended by Act No. 169, Laws of 1887, reads as follows:

"If, however, the executor named in any last will and testament, or the administrator with the will annexed of any estate duly appointed, shall be residuary legatee, instead of the bond prescribed in the preceding section, he may give a bond in such sum and with such sureties as the court shall direct, with a condition only to pay all the debts and legacies of the testator, and in such case he shall not be required to return an inventory."

There is nothing in this section which modifies the foregoing sections, charging the property in the hands of the executor with the payment of the debts. That remains the same, whether the executor qualifies under section 5835 or 5836. The effect of the section is to place the assets of the testator in possession and control of the residuary legatee who has filed a bond to pay the debts and legacies, with the right of disposition so long as he remains executor. His title to the property, however, is derived from the will of the testator, and is held subject to the payment of the debts of the testator. The statute confers no absolute title upon him discharged of the claims of creditors, but by filing the residuary legatee's bond and the grant of letters testamentary to him he becomes invested with the right to take possession of the assets of the testator for the purpose of paying the debts, and may convert the real estate into money to enable him to pay the debts, without being obliged to apply for leave to

sell to the probate court, as otherwise he would be required to do. His title and right to the possession are qualified, and subject to be defeated by a removal from office, in which case the property of the testator undisposed of would revert to the estate, and become vested in the administrator *de bonis non*.

The main difference between the administration of the estate by an executor who is a residuary legatee, giving bond for the payment of debts, and the executor giving the other bond required by statute, is that in the former case no inventory is required, and sales of both real and personal property can be made without application to the probate court for leave to sell. In the former case the executor is less under the supervision of the probate court than the latter, but in both cases the duty to pay the debts of the testator remains, and is attached to the office of executor, and the performance of this duty can be enforced in a proper way,—by the probate court, where he has power to enforce obedience to his orders and decrees; by the court of chancery, where the jurisdiction of the probate court is incomplete or insufficient.

The condition of the bond to pay the debts, given by an executor who is a residuary legatee, differs from the bond given by any other executor only in this: In one case he agrees to pay the debts unconditionally, whether there are sufficient assets or not; and in the other he agrees to pay the debts out of the assets; and, if there are sufficient assets for that purpose, there is no difference in the quality or extent of their obligations. In exempting the executor from the duty otherwise imposed, of returning an inventory, the statute did not intend to place the executor beyond the pale of responsibility in case he should violate his duties as executor, or neglect to perform them.

It has been said that the effect of the statute was to vest the absolute title to all the assets in the legatee, and that

they became and are his personal and individual property as fully as any other property which he owns; that creditors have no claims upon it whatever, and he cannot be called upon in any court or in any case to render an account of his official.acts as executor; that the administration is closed; and that the creditors' sole remedy is upon the bond.

It appears to me, however, that these positions cannot be sustained by reason or upon authority. There is nothing in the statute which declares that he shall become the absolute owner of the assets, and that such assets, on the filing and approval of the bond, become his individual property. On the contrary, the statute declares that all of the estate in the hands of the executor shall stand charged with the payment of all the testator's debts. His office of executor is not terminated on the filing and approval of the bond to pay the debts and legacies. On the contrary, that is the condition precedent to his right to receive letters testamentary, which is his authority to act at all in the administration of the estate. He cannot be sued personally for a debt due from the testator, but only officially, as executor. How. Stat. §§ 5902, 5929, 5946, 5947; *Jenkins v. Wood,* 140 Mass. 67 (2 N. E. Rep. 780). And if commissioners on claims are appointed, no action can be brought against him, except in a few specified cases, until the time limited for payment of debts has expired. And his individual property cannot be taken in execution upon a judgment against him as executor, at least until after the time for the payment of debts has expired. How. Stat. § 5929; *Farr v. Newman,* 4 Term R. 621; *Peckham v. Berrien Circuit Judge,* 74 Mich. —— (41 N. W. Rep. 926).

His office, therefore, continues, and he may be removed for failing to file a new bond by the probate court, or failure to comply with any lawful order or decree of that court. How. Stat. §§ 5842, 5858, 6005, 6008. If he cannot be called upon to make any report to the probate court, and if the administration of the estate is closed by giving a bond to pay

debts and legacies, then the probate court has no further jurisdiction over him or the estate. If the bond is the only remedy of the creditors, and the probate court has no further jurisdiction over him or the estate, he may resign or remove from the jurisdiction immediately after his appointment, and the probate court would have no authority to appoint a successor. What object could possibly be accomplished by appointing an administrator *de bonis non?* The title to the property, according to this theory, has passed to the legatee, and become as absolutely his own as any other property which he has procured by his labor or money, and hence cannot be brought back into the body of the estate, and there is absolutely nothing for an administrator *de bonis non* to administer.

The residuary legatee may foist upon the judge of probate a bond with an insufficient penalty, or with irresponsible sureties. He may neglect to file a new or sufficient bond, if required, and in the very face of the creditors and of the court he may transfer the property with the fraudulent intent to cheat the creditors, and place the property of the testator beyond their reach, with the avowed purpose of not paying the debts, and point the creditors to the worthless bond as their only remedy. A construction of a statute that leads to such injurious consequences and fraudulent results should be avoided, if possible; the more so as it is not by the letter of the law, but by construction alone, that such results are reached.

Such construction of section 5836 abrogates effectually the statutes relative to the administration of the estates of testates, through the interposition of the probate court, and at the same time nullifies the will of the testator.

Under our statutes, the assets of an estate are not regarded as administered until they have been collected and applied as required by law or the will of the testator, and until it is fully administered the probate court has jurisdiction in the

matter of the proceedings, and in this case it was competent for the court to require the executrix to file a new bond, and to remove her for failure to comply with the order.[1] *Holbrook v. Campau,* 22 Mich. 288; *Levering v. Levering,* 2 Atl. Rep. 1, 1 Cent. Rep. 502, and notes.

It is true that executors take personal property of the testator as owners in their official capacity, for they have no principal behind them for whom to act. But they hold it in their official capacity as executors, and if they die, resign, or are removed, the assets undisposed of by them fall back into the estate of the deceased, and may be sued for and recovered by the administrator *de bonis non* with the will annexed. How. Stat. § 5861; 1 Williams, Ex'rs (6th Amer. ed.), 703. In *Bidwell v. Whitaker,* 1 Mich. 472 it was said that the word "lien," in its largest sense,—

"Embraces every case in which property is *charged* with the payment of any debt or duty. To be *charged* with the payment of any debt or duty is equivalent to being *liable* for the payment of any debt or duty. Either form of expression imports a right *in rem.*"

The lien of creditors created by statute upon the assets of deceased persons has been recognized by the decisions of this Court. *Burns v. Berry,* 42 Mich. 176 (3 N. W. Rep. 924); *Winegar v. Newland,* 44 Id. 367 (6 N. W. Rep. 84); *Pierce v. Holzer,* 65 Id. 263 (32 N. W. Rep. 431); *Hoffman v. Beard,* 32 Id. 218.

Under our system the settlements of estates of deceased persons are essentially proceedings *in rem* (*Howard v. Moore,* 2 Mich. 226), as they are in most of the other states, in which the *res* is the decedent's estate, and the *jus ad rem* is in the creditor. Upon the death of a person leaving creditors, the debts, previously personal obligations, become immediately property obligations, with all the force of a lien upon the debtor's estate. *Grignon v. Astor,* 2 How. 319. Now,

---

[1] See *Buss v. Buss Estate,* 75 Mich. 163.

if it be conceded that a residuary legatee's bond takes the place of the estate left by the deceased, then, of course, it would follow that the *res* would be destroyed, and the proceedings thereafter would be *in personam*. But this is not conceded. It is the very point in dispute. The statute nowhere declares that such bond shall have the effect to release the lien of the creditors. In the absence of such statute, the bond can only be considered as a cumulative remedy in behalf of the creditors.

It is urged that this view is unjust to the residuary legatee, as by giving the bond he undertakes to pay all the debts, whether the assets are sufficient for that purpose or not. The answer to this is, that the giving of such undertaking is entirely voluntary on his part. The court cannot compel him to give it, and, if he had rather give the bond than make and return an inventory of the estate, he is at liberty to do so, knowing the risk he is assuming when he enters into it. There is no injustice in holding him to a responsibility which he voluntarily assumes

The question under consideration early came before the courts of Massachusetts. By the statute of that state, passed in 1783 (chapter 32, § 3), it was enacted that the real estate of which any one shall die seized shall stand chargeable with all the debts of the deceased. By another section of the statute, which is the same as ours, it was provided that when the executor was also residuary legatee he might give a bond conditioned to pay all of the debts and legacies of the testator, in which case he should not be required to return an inventory. In *Gore v. Brazier*, 3 Mass. 523, it was held that this section has no application to the lien on the testator's estate, real or personal, and that this lien remains in full force, and the benefit to be derived by the creditor or legatee from the bond was merely cumulative. In this case there was a residuary legatee who had given bond to pay all debts and legacies. The executor, acting upon the theory

that he became the owner of all the property of the testator, conveyed certain land, of which the testator died seized, to Samuel and Henry Brazier, who sold the same to plaintiff, with covenants of warranty. A creditor of the testator obtained judgment against the executor, and levied upon the land, had the same appraised, and received possession. Thereupon the plaintiff brought his action for breach of covenant with warranty. The court held that the property was liable to be seized for the debt of the testator, and gave judgment for plaintiff.

The principle asserted in *Gore v. Brazier*, that the creditor has a lien upon the assets, and that the residuary legatee's bond is merely cumulative, was approved in the recent decision of the case of *Collins v. Collins*, 140 Mass. 502 (5 N. E. Rep. 632).

In that case John Collins made a will, by which he gave to his wife, to be held in trust for Beulah Collins, his granddaughter, who was then an infant, a legacy of $500. He gave the residue of his estate to his wife, Margaret Collins, and appointed her sole executrix. John Collins died, and his will was admitted to probate February 2, 1872, and letters were issued to Margaret Collins, March 4, 1872, she giving a bond as residuary legatee to pay debts and legacies. The executrix filed no inventory of the estate, and no account in the probate court. She died December 1, 1872, and the defendant was appointed administrator *de bonis non* with the will annexed, and gave the usual bond. He also filed a first and final account, which was allowed. This was in 1873.

Beulah Collins became of age in 1884, and, the legacy not having been paid, she commenced an action against the administrator to recover it. She had previously obtained leave of the probate court to bring suit upon the bond, but no suit had been brought. The court said:

"The first defense relied on is that the executrix was residuary legatee, and gave bond to pay debts and legacies,

and that by so doing she made the estate her own, so that it could not be followed into the defendant's hands by a legatee having no specific charge upon it.

" The result of this contention, if correct, would seem to be that no administrator *de bonis non* could be appointed in such cases, or, at least, that property not specifically bequeathed or charged would not come to his hands. But we are of opinion that it is not correct. It is true that the bond made the executrix personally liable upon it to the extent of its penalty, but that is not sufficient to exonerate the estate, unless the statutes provide that it shall have that effect. We find no such provision. On the contrary, it is expressly provided in Pub. Stat. c. 129, § 7, that the lien of creditors on the real estate shall be preserved, except on such part as shall be sold to a *bona fide* purchaser for value. And it is at least open to argument that the words, 'and all estate not so sold may be taken on execution by a creditor not otherwise satisfied, in like manner as if a bond had been given in the other form,' are not confined to real estate.

" However this may be, the purpose of the section was to confirm the doctrine of *Gore v. Brazier*, 3 Mass. 523, 543, to the effect that ' the lien on the testator's estate, real or personal,     *     *     *     remains in full force, and the benefit to be derived by a creditor or legatee from the bond is merely cumulative.' Or, in the language of the commissioners on the revision of the statutes in 1835, who introduced the section, ' the whole estate of the deceased is put into his [the executor's] hands as the fund out of which the debts are to be paid.' Commissioner's note to chapter 63, § 20.

" It is true that it had been decided before the Revised Statutes that, when an executor had given bond to pay debts and legacies, the probate court could not grant a license to an administrator *de bonis non* to sell real estate for the payment of debts, at least as against a *bona fide* purchaser from the executor.     *     *     *     But this exception is shown to be consistent with the principle quoted from *Gore v. Brazier*, by the fact that it also is adopted by the statute.     *     *     *     It is true that giving bond made it the executrix's duty to set apart a fund for the trust, but a duty to pay and payment are unfortunately not the same thing. We have already shown that the liability upon the bond was only cumulative."

It was at one time strenuously contended that an executor duly appointed and qualified took the absolute title of the

personal assets left by the testator, and held it the same as his own individual property, because he had the right to dispose of it, and give a good title to the purchaser, and that, therefore, an execution could be levied upon such assets in his hands issued upon a judgment against him personally. But this contention was refuted in the masterly arguments of the judges of the court of king's bench in the case of *Farr v. Newman*, 4 Term R. 645.

The instances where the executor becomes fully invested with the title to the goods of the testator in his hands are laid down in 1 Williams, Ex'rs, bottom pp. 646–649. One of the cases is where he has paid the debts out of his own funds. The assets become his to an equal amount; and, by parity of reasoning, if the executor be residuary legatee, and has paid all the debts and legacies, the assets become his absolutely. The error has been in regarding the bond to pay debts and legacies as payment. But, as remarked in *Collins v. Collins*, the duty or agreement to pay and payment are not the same thing, and it is only by payment that the duty is discharged and the absolute title passes.

In *Jenkins v. Wood*, 140 Mass. 67 (2 N. E. Rep. 780), in speaking of a residuary legatee who was executor, and had given bond to pay debts and legacies, the court held that the liability of such person was as executor, and said:

"That he is so liable, and that the bond is collateral to that liability to secure its enforcement, is too obvious and well settled to be questioned;" citing *Jones v. Richardson*, 5 Metc. 247; *Colwell v. Alger*, 5 Gray, 67; *Holden v. Fletcher*, 6 Cush. 235; *Bank v. Stanton*, 116 Mass. 435; *Jenkins v. Wood*, 134 Id. 115.

In *Holden v. Fletcher*, 6 Cush. 238, it was held that—

"The bond which the defendant gave for the payment of 'all the debts,' must be construed (like the usual bond given by an executor or administrator) with reference to the other provisions of law concerning his liability."

In *Jones v. Richardson*, 5 Metc., at pages 250, 251, Chief Justice Shaw, said:

"Perhaps it may be said that, by the express condition of the bond, the executor and his sureties are bound to pay the debts and legacies; that creditors or legatees have a remedy, in the name of the judge of probate, on the bond; and that such is their only remedy. But this is opposed both by the statute and by a long course of decisions. It is provided by the Rev. Stat. c. 63, § 4, that the giving of such bond, to pay debts and legacies, shall not (with certain exceptions) discharge the lien on the real estate of the testator, etc.

"But in order to charge the real estate, or the goods and personal estate, of the testator, it is necessary to obtain a judgment against the executor; and this shows conclusively that the bond was intended as a cumulative, not an exclusive, remedy, and that the creditors and legatees were left to the usual remedy against the executor as such. Otherwise it would happen that, although the testator left ample property, yet, if the executor and the sureties on his bond should become insolvent, the legatee would be without remedy. That such a bond is collateral security only, leaving the legatee to any other remedy he may have, has been decided as the true construction of a similar provision in Stat. 1783, c. 24, § 17, by a series of cases."

The doctrine of the Massachusetts cases is that the lien created by statute is not extinguished by the giving of the bond to pay debts and legacies, but that such bond is cumulative, and that the administration is not closed, but is still under the jurisdiction of the probate court. The later decisions also hold that the case of *Gore v. Brazier*, enunciates the correct principle, and that the additional section inserted in the Revision of 1835 was only declaratory of what the court held to be the law without it, namely, that the filing of such bond did not extinguish the lien, but that it was cut off by a sale of the property by the executor to a purchaser in good faith.

The Michigan Revised Statutes of 1838 followed very closely the Massachusetts Revised Statutes of 1835, and included the section which has been inserted by the revisers

referred to in *Collins v. Collins, supra.* But in the Revision of 1846 many important changes were made. The section following that authorizing the residuary legatee to give a bond to pay debts and legacies, whereby it was provided that the giving of such bond should not discharge the lien on the real estate, except only such part as had been sold by the executor to a purchaser in good faith, was dropped out.

Commissioners who by the statute of 1838 were appointed only in case of insolvent estates were by the Revision of 1846 made the tribunal for hearing and adjusting claims in all cases, except where there were no debts, or the whole estate did not exceed in value $150, which was assigned for the support of the widow; and if commissioners were appointed no suit could be brought against the executor until the time limited for payment of debts had expired, with exceptions in favor of real actions and replevin.

Claims of creditors were barred if not presented to the commissioners within the time fixed by the probate court when the commissioners were appointed, and the probate court was required to fix the time within which the executor should dispose of the estate, and pay the debts and legacies, not exceeding one year and six months in the first instance. The time might be extended, not exceeding four years in all. When the time limited had expired, the probate court might order notice to be given to the creditors of the time limited for the payment of debts; and, if the creditor did not demand his debt or dividend from the executor within two years, his claim was barred. If the appointment of commissioners were omitted, claimants were authorized to sue the executor.

In 1850 the law was amended so that the appointment of commissioners was discretionary with the judge, except when requested in writing by the executor or administrator to do so, and if none were appointed the duties devolving upon the commissioners were to be performed by the judge of

probate, but the right of bringing suit was retained. The bond cannot be prosecuted by a creditor until after the time for payment of debts limited by the probate court has expired (How. Stat. §§ 5994, 5997; *Biddle v. Wendell*, 37 Mich. 452), unless a decree of distribution is sooner made upon a settlement of the estate by the executor or administrator.

Suppose the executor, who is a residuary legatee, and has given bond to pay debts, desires that claims shall be adjusted by commissioners, is he not entitled to have them appointed, and if they are appointed are not the creditors obliged to prove their claims before the commissioners on peril of being barred? He may desire to know the extent of his liability, and when he will be released from further claims. Must he be denied any relief in a court of probate? Has he not a right to the same time in which to pay debts as he would have, had he given the other bond required by law? And is he not entitled to the same protection against being harrassed by suits until the time to pay debts has expired? Is he not entitled to the aid of the court to reach concealed or embezzled property or assets under section 5876, or under section 5878, with reference to property intrusted by the executor to a person who refuses to account for it? Does the giving of such bond so close the administration that all rights, remedies, and jurisdiction of the probate court are cut off which are provided for by chapter 228, How. Stat.?

The only view which I can take of the effect upon the course of administration in the probate court which the giving of the residuary legatee's bond has, is that it excuses the executor from returning an inventory, and as a consequence it confers upon him the right to dispose of both the real and personal estate without being licensed thereto by the probate court. He receives the estate of his testator in his official capacity for administration; that is, to convert it into money and pay the debts and legacies. His authority to sell is derived from his letters testamentary and the force of the

statute. The act must be his official act, no less than if he was an executor acting under a license, and qualified by giving the ordinary bonds. His individual deed would only convey his individual interest, given to him by the will, and that would be only the residuum after debts and legacies are paid; and the sale of his individual interest would not discharge the lien of creditors, any more than a sale by any other legatee or heir would discharge such lien. *Burns v. Berry,* 42 Mich. 176 (3 N. W. Rep. 924); *Winegar v. Newland,* 44 Id. 367 (6 N. W. Rep. 841); *Hoffman v. Beard,* 32 Id. 218.

If I am correct in this position, then the deed executed by Asenath Cook in her individual capacity on the eighteenth day of July, 1877, to S. Titus Parsons, even had he been a *bona fide* purchaser, did not discharge the lien of creditors upon the land, but only conveyed her individual interest as legatee, and which, as appears by the admitted facts in the record, was nothing; the debt proved against the estate being much more than the total assets of the estate.

Section 5864, How. Stat., enacts:

"All acts of an executor or administrator, *as such,* before the revocation of his letters testamentary or of administration, shall be as valid to all intents and purposes as if such executor or administrator had continued lawfully to execute the duties of his trust."

Had Mrs. Cook conveyed the land as executrix, such act, at least as to a *bona fide* purchaser, under the authority of the above section, would have been regarded as valid and binding, and as such would have cut off the lien of creditors.

The complainant, Martha Lafferty stands in no better position than her grantor, S. Titus Parsons. She has obtained no greater interest than her grantor had. Her situation is not one that entitles her to the special protection of a court of equity. An examination of the public records of recorded conveyances would not have shown any title whatever in Asenath Cook. They would have shown that Olney Cook

died seized of the land, and a purchaser thus put upon inquiry would have ascertained from the records in the probate court that Asenath Cook had been appointed sole executrix, and had given a bond to pay the debts and legacies as a residuary legatee, in the penalty of $1,000; that she had been required to give a new bond, but the day before the time limited therefor she made her individual deed of the land in question to S. Titus Parsons, and at the same time a petition was on file claiming that the testator owed defendant nearly $15,000; that she neglected to comply with the order, and instead had conveyed away her interest in the land; had been removed, and an administrator *de bonis non* appointed to administer the estate. Commissioners on claims had also been appointed, and the administrator *de bonis non* was proceeding in the execution of his trust.

A purchase from Parsons, under such circumstances, would appear upon its face to partake very much of a speculative character, and the purchaser can hardly be accredited with that good faith which entitles her to protection as an innocent purchaser. She must be chargeable with notice of whatever defects appear in the proceedings of the probate court affecting the jurisdiction, and, if the lien of creditors had not been discharged by lawful acts of the executor, the land in her hands was charged with the payment of the debts, and might be sold for that purpose.

The administrator *de bonis non* had the right to apply to the probate court for license to sell the land in question, and the probate court had authority to grant such license. A sale made in pursuance to such authority, under and in accordance with the statute, does not constitute a cloud upon complainant's title, but under the facts disclosed by this record the complainant's claim constitutes a cloud upon the title of the purchaser at the administrator's sale.

It is not necessary to decide upon the validity of the tax-deed held by the defendant.

It is claimed by the defendant that the probate court has no jurisdiction to issue letters testamentary to Asenath Cook, for two reasons:

1. No notice of the time and place when the bond given by the party named as executor and residuary legatee was to be considered was given by the judge of probate to the creditors.

2. The bond given was with only one surety, when the statute requires more than one; its language being that the bond shall be given with sureties.

We do not consider it necessary to decide these points upon the record before us, as what has been said disposes of the case. We may, however, suggest that, if the court had jurisdiction to make the appointment, the fact that there was but one surety would not render the acts of the executrix void after letters testamentary had been issued to her. The defective bond would be an irregularity, which could be corrected in the probate court under the statute. Section 5864, above cited; *Slagle v. Entrekin*, 44 Ohio St. 637 (10 N. E. Rep. 675).

Upon the first point we suggest that, if the construction of the complainant is correct, the giving of the residuary legatee's bond discharges the lien, closes the administration, and the creditors have no other remedy than an action upon the bond for the payment of their debts. Then the creditors are vitally interested in the sufficiency of the bond and the responsibility of the sureties. In a case of such importance to them, they would have a right to be heard before the bond was approved. Notice to parties whose rights are to be affected lies at the foundation of legal proceedings, and is the touch-stone of jurisdiction. Nothing is plainer than, if the giving of the bond is to have the effect contended for, that notice should be given, and that it is a prerequisite to the approval of the bond which has such important consequences. The estate could not be swallowed up by the executor, and a paper bond, with its naked promise to pay the debts, be substituted in its stead, without the creditors having their day

ιn court upon the question of the sufficiency of the substitute to which they must look for their pay.

Great care is required of probate courts in taking executors' bonds. Ordinarily the judges duty requires him to fix the penalty with reference to the amount of the assets, and not to the liabilities, of the testator; but in the residuary legatee's bond the case is reversed, and the penalty must be fixed with reference to the debts and legacies. The legacies appear upon the face of the will, but there is no way in which the court is informed of the amount of the debts. Unless some notice is given to creditors at the time and place where he will fix the amount of the bond which a residuary legatee proposes to give, so that they may in some way inform the court, it must necessarily be a matter of guess-work with the court in fixing the penalty.

Other points have been suggested which are claimed to be fatal to the defense; but as they have not been discussed or raised in the brief of counsel, and as the complainant has the burden of making such a case as entitles her to equitable relief, we have thought best to place our decision upon the merits of the case as presented.

The decisions of this Court have thus far been upon the extent of the liability of the principal and sureties upon such bonds, and upon that question there has been no difference of opinion, either in this or in any other court that I am aware of, where the question has been raised.

I have less hesitancy in stating what I believe to be the true doctrine upon the subject under consideration, as this is the first time a dispute concerning the title acquired by the residuary legatee who has given such bond has been brought before us for adjudication.

For the reasons stated, it is my opinion that the bill of complaint should be dismissed, with costs of both courts.

MORSE and LONG, JJ., concurred with CHAMPLIN, J.

CAMPBELL, J. (*dissenting*). When this case was before this Court, and the demurrer overruled (70 Mich. ——, 38 N. W. Rep. 221), it was decided that without proof upon the questions raised by the contending parties it was better to hold the pleadings open for final examination, and to make no rulings on the law points till the whole matter was investigated. Upon the record as finally made up in the circuit court for the county of Wayne, that court sustained the complainant's bill, and held defendant was not holder of a superior title. The opinion is not before us, and the decree contains no specific recitals. But there can be no question under our former decision that complainant's title is on its face valid, unless overcome by the subsequent probate proceedings, and that her legal title called upon defendant to show a better one. The decree below should stand, unless shown satisfactorily to be erroneous.

It is only necessary, in view of the statement of facts set out in the former decision, to indicate briefly the controversy as it now stands

Olney Cook, of Detroit, died in August, 1876, leaving all of his property to his wife, and making her and Royal C. Remick executors. When the will was admitted to probate, bonds were required in the sum of $10,000, but on Mr. Remick's declining to act Mrs. Cook filed a residuary legatee's bond to pay debts and legacies, in the sum of $1,000, which was approved by the probate judge. No one appealed from this proceeding, which took place at the October session of the Wayne probate court, on Monday, October 2, 1876.

On the twelfth day of June, 1877, defendant filed a petition in the Wayne probate court, asking for a new bond. The only facts on which this petition was based, and the only reasons given in it, were that defendant "is interested in said estate as a creditor of said deceased," and that the bond is insufficient "for the following reasons, viz.: That the

claim of your petitioner alone against said estate amounts to nearly $15,000." No objection was made in this petition to the regularity or propriety of the original acceptance of the bond, and no reason is given why complaint was not made earlier.

It does not appear from the record what notice was given of this application. On the ninth day of July, 1877, the probate court ordered Mrs. Cook to execute a new bond in the sum of $20,000 within 10 days, which she omitted to do. It does not appear that Mrs. Cook was notified of this order.

On July 21, 1877, defendant filed another petition, praying for the removal of Mrs. Cook as executrix, and that she account. The facts set out are (1) that defendant "is interested in said estate as a creditor of said deceased," and (2) the neglect of Mrs. Cook to file a new bond. There are no allegations showing notice or anything beyond the omission to give bond. On the same day, July 21, 1877, Mrs. Cook was removed.

On September 3, 1877, Henry D. Barnard was appointed administrator *de bonis non* with the will annexed. The record does not show upon what application or notice this was done.

Commissioners were appointed September 10, 1877, and reported March 21, 1878. Nothing appears concerning them or their action, except that they allowed a claim to defend_ant for $13,931, but of what nature the record is silent, and no other creditors appeared.

On the second of July, 1879, Mr. Barnard filed a petition for leave to sell real estate, and on September 30 he was licensed to sell the land in controversy, and other lands not described in the record. On March 5, 1880, this and other land was sold to Francis Palms, the report of sale being made April 5, and confirmed April 21, 1880. December 10, 1880, Mr. Palms conveyed to defendant, and the deed was recorded November 1, 1881.

Complainant's title came in this way:   On July 18, 1877, Mrs. Cook, the residuary legatee, conveyed the lo, in dispute to S. Titus Parsons by warranty deed, for a stated consideration of $4,000.   This deed was recorded October 25, 1877. On November 15, 1877, Parsons and wife conveyed by warranty deed to complainant for a consideration of $6,000, actually paid in property sworn without contradiction to be worth that sum.   On the first of January, 1878, complainant went into open and recognized actual possession, and has ever since been so possessed.

Neither Palms nor defendant ever undertook or sought to get into possession, and complainant, having no other means of settling the title, brought this bill, April 27, 1887; defendant having held claim for six years and upwards without moving to enforce it.

There are only two laws under which defendant could have been incorporated.  It does not appear from the record which statute was complied with, but both contain positive directions for what purposes savings banks may take or hold lands (How. Stat. §§ 3142, 3231), and both absolutely forbid taking or holding for any other purpose (How. Stat. §§ 3143, 3231).   Banks have always been limited in this State in their power to take lands, and it was held in *Bank of Mich. v. Niles,* 1 Doug. 401, that such a restriction as appears here made the contract under which land was taken absolutely unlawful and void.

The present record contains nothing to sustain the purchase.   The property is not a banking-house or occupied for banking business; it was never mortgaged to defendant to secure a debt lawfully incurred; and it was not sold upon any judgment or decree in defendant's favor, and was not bid off by defendant at all, but by another person.

Furthermore, in the Savings Bank statute in How. Stat. § 3231, property not used for the business of the bank is required to be sold within five years from its acquisition.

Under the practice, in suits like the present, a party setting up a claim to land, and yet lying by and refusing to enforce it, is entitled to no equitable consideration, and must rely on such strict rights as he possesses. As the party in possession cannot resort to a legal action, the only one who could do so, and who relies on what is claimed to be a legal title, should not be favored beyond his legal right.

This defendant admits and asserts that it had no purpose of resorting to legal remedies at all, and was holding back to compel complainant to sue. There is no explanation given which would bring the defendant within any enabling provision of the statutes as a purchaser, and none which explains the retention beyond five years. Whether or not this latter violation of law should be regarded in this suit, the former is settled by authority. So far as banks are concerned, they have no general power to take lands.

But the question is presented, and was raised on both hearings, whether the complainant's purchase from the residuary legatee's grantee is subject to any interference by the action of the probate court. There are several subordinate inquiries involved in the record. The question coming first in order of time, as well as being otherwise important, relates to the liability of an estate once adjudged to the residuary legatee to be thereafter meddled with by the probate court as coming under the rules applied to ordinary estates.

In the outset it must be remarked that this case must be governed by the laws of Michigan, as recognized and construed by this Court, and that the statutes or decisions of other states cannot prevail against our own. The only state to which counsel referred for light is Massachusetts, from which it was insisted we borrowed our statutes, and to which we should look for guidance. It is not true, however, that we copied our probate system from that state, as it now stands, to any general extent, and in some of the most important matters bearing on this controversy we distinctly rejected

that system.   But in the light of our own repeated rulings
it would be violating all rules of decision to override what
has been recognized as the law of our own State to follow the
decisions of any other region whatever.   In referring to some
of the differences between the two states, which, however,
would not authorize some of the assumptions made for them,
I do not recognize that we should, under any circumstances,
disregard our own decisions, as to the proper force of the
statutes.

Under our Michigan probate system, when an estate,
whether testate or intestate, is settled in the ordinary way,
the executor or administrator gives bonds to inventory and
return all property coming to his knowledge;  and to admin-
ister according to law and to the will of the testator all his
goods, chattels, rights, credits, and estate, and out of it to
pay all debts, legacies, and charges, or such dividends as shall
be ordered by the probate court;  to render a true and just
account of his administration to the probate court within
one year, and at any other time when required by said court;
and to perform all orders and decrees of the probate court by
him to be performed in the premises.   How. Stat. § 5835.
This bond covers every conceivable duty of any executor, and
the purposes recited specially cover all of his usual functions.
It is the plain purpose of the statute to leave no duty unpro-
vided for.

By section 5836 it is declared:

"If, however, the executor shall be residuary legatee,
instead of the bond prescribed in the preceding section, he
may give a bond in such sum and with such sureties as the
court may direct, with a condition only to pay all the debts
and legacies of the testator; and in such case he shall not be
required to return an inventory."

By section 5846 joint or separate bonds may be given in
case there is more than one executor.

By our probate laws it is also provided that, except where

suits are pending against the decedent, all claims, except for title or possession of land, shall be established before commissioners, or before the probate judge acting in the same capacity; and judgments recovered in suits pending must also be certified to the probate court, instead of being enforced by execution. And all claims are payable ratably, except a few preferred claims due to the government, or to persons holding special equities as recognized by statute. How. Stat. chap. 224.

In other words, the proceedings in ordinary estates are proceedings *in rem*, analogous to bankruptcy proceedings. The executor is only bound to the extent of the assets which he had or should have had. *Basom v. Taylor*, 39 Mich. 682; *Peckham v. Hoag*, 57 Id. 289 (23 N. W. Rep. 818).

It has been decided several times in this Court that all claims against estates in administration must be established under the probate laws, and that no other courts have jurisdiction to create charges against the estate, and that the probate court is the only court which can reach persons absent as well as present through its jurisdiction *in rem*. *Dickinson v. Seaver*, 44 Mich. 624 (7 N. W. Rep. 182); *Clark v. Davis*, 32 Id. 154; *Barry v. Davis*, 33 Id. 515; *Shurbun v. Hooper*, 40 Id. 503; *Shelden v. Walbridge*, 44 Id. 251 (6 N. W. Rep. 681); *Patrick v. Howard*, 47 Id. 40 (10 N. W. Rep. 71); *Aldrich v. Annin*, 54 Id. 230 (19 N. W. Rep. 964); *Peckham v. Berrien Circuit Judge*, 74 Id.— (41 N. W. Rep. 926).

These cases hold that courts of equity have no more power over claims and their allowance than courts of common law, and that even on appeal the circuit courts can admit nothing not claimed below. And in *Palm's Appeal*, 44 Mich. 637 (7 N. W. Rep. 200), it was held there was no way to reach the proceedings on claims acted on except by appeal. The statute is express that claims not presented in the manner specified shall be absolutely barred. How. Stat. § 5901.

The result of all this is that the whole business of settling up an estate in the ordinary way is in the probate court, which has power in some cases to extend time both for proof and for payment of debts, and that the files and records of that court will, if properly kept, show all the items of the estate, and their disposition, by the inventory and the accounting under it.

And every person claiming to be a creditor is bound by the proceedings from beginning to end, unless he appeals from them, precisely as in bankruptcy and other proceedings *in rem*, and because they are *in rem*. For manifest reasons constructive notice is all that can be given to creditors in most cases, inasmuch as they may be unknown or out of the jurisdiction, and the power so to reach them is only given by statute to the probate court. *Dickinson v. Seaver*, 44 Mich. 624 (7 N. W. Rep. 182). There is no instance in jurisprudence where con structive service is lawful, except when the court acts *in rem*. No personal effect can be given to judgments without personal service. This is elementary. And accordingly when the *res* ceases to be within the jurisdiction the jurisdiction itself ceases. This was declared in *Durfee v. Abbott*, 50 Mich. 279 (15 N. W. Rep. 454), which will be referred to again.

This has been referred to for its bearing on the rights and duties of creditors who desire to assert their claims.

When a will is offered for probate, a general notice is given, which binds all persons interested. Those directly interested are the family and kindred, the legatees and devisees, and the creditors. The primary object of the hearing is to determine whether or not there is an intestacy. If the will is not sustained, the estate is subject to the ordinary administration as an intestate estate; and if there is no executor, the administration with the will annexed is granted in the same way as in a case of intestacy. Any creditor is interested in the determination of these matters, inasmuch as a will may make

provisions complicating the conditions of payment, or may appoint an executor who will not be a safe manager; and, whatever may be the result, the creditors are interested in having good and adequate bonds, but if they do not appear they may be damnified.

An executor's bond is only required for the safety of parties interested, and it is sometimes very properly made only nominal. If the testator desires it, or if the property which the executor can dispose of is small, the bond may be safely made so, and, unless he has power to sell lands, need only be measured by personalty; and, if the executor is an heir or devisee, there is no occasion for covering anything that would fall to him, except in favor of creditors or other legatees. But, as all bonds protect creditors, it is for their interest, and it is their duty, if they need protection, to appear and show it.

As the statute distinctly contemplates that bonds shall be given in view of the indebtedness of the estate, the judge of probate is bound to inquire into the question, and it must always be presumed that he does so, and that his conclusion is correct. If fault is found with it, an appeal is always open to the party dissatisfied, and if he fails to take it his mouth should be closed, unless he has been misled or defrauded, or without his own fault prevented from appealing. There can be no doubt of the power of the judge of probate to examine parties and witnesses concerning any matter on which he is to exercise his judgment. *Carpenter v. Probate Judge*, 48 Mich. 318 (12 N. W. Rep. 397); *Rathbone's Estate*, 44 Id. 57 (6 N. W. Rep. 115).

In the present case no reason was given in the application for a new bond why defendant made no showing, or why it did not appeal. It was not claimed in that petition that the probate judge was wrong in taking the residuary legatee's bond as he did. On the contrary, that is assumed to have been legally and properly taken. Neither is it shown that

defendant was not fully informed all the while on the subject and acquiescent.

On the argument in this Court it was claimed that, the judge of probate having fixed the executors' bonds at $10,000, the subsequent acceptance of a bond for a less sum was not only wrong, but invalid, as defendant was not supposed to be in court or cognizant of the change. Such, however, is not the claim of the petition, and such is not the law.

The statute allowing an executor who is a residuary legatee to give a restricted bond does not apply where there is also an executor ready to act who is not such a legatee. By Olney Cook's will Mr. Remick and Mrs. Cook were both made executors, and when the will was probated it became the duty of the probate court to fix the bond on that basis, unless Remick declined on the spot, as he did not. Remick, as a stranger in estate, would be liable to Mrs. Cook as residuary legatee, as well as to any creditors, and the penalty of the bond must therefore be such as would hold him for all that should come into his hands; and as the bond might be joint, and there is no statutory recognition of a difference in the bonds of two joint executors, it would be necessary to have the bond large enough to cover the whole estate, so far as he had power over it, and the bond was, no doubt, fixed on that basis. But the statute also contemplates a possible failure on the part of one or more executors to qualify. It also contemplates that a sole executor who is residuary legatee may give the special bond, and this could only be done when the other declined to act.

But when the residuary legatee became sole executrix, then, as there were no other legatees, there was no need of a bond larger than would cover debts, and the security which Remick should have given for Mrs. Cook's protection was no longer needed, and a smaller one was proper, unless the existence of debts had been brought to the attention of the court. But the probate proceedings

upon a will are not terminated by fixing the penalty of the bond. If no bond is given seasonably, then the estate may be turned over to an administrator at the request of the parties who would be entitled to be heard in case of intestacy; and, as no creditor can procure allowance and payment of his claim without administration, it was the duty of defendant to pay such heed to the proceedings as to be able to know whether any executor qualified, so as to have administration granted in case the executors failed to do so, and in that case to look after both the person and the security.

Defendant was bound, therefore, on its own behalf, to be informed what course was taken, and there is nothing to show a want of such knowledge, or any reason for it, or to show why, if dissatisfied, no appeal was taken. As already stated, there was nothing in the petition and nothing in the proof to indicate that defendant did not know all about the estate, as presumably it did. The acceptance of the bond, not appealed from, was an assurance to all the world that the statute had been complied with which turned over this property to the residuary legatee.

There is nothing in the statute or in the nature of the case which called for any further official action by Mrs. Cook as executrix. By accepting the statutory permission, she had made herself personally liable for the debts. And there is no need of any formality on the part of an executor in turning over devised lands to a devisee. They pass by the will itself. It was held in *Chapman v. Craig*, 37 Mich. 370, that a residuary legatee is not bound in an action to show that the estate is settled, or the debts and legacies paid and the representative discharged, but may sue as owner. And even in regard to specific bequests it was held in *Eberstein v. Camp*, Id. 176, that the executor ought not to withhold them, unless apparently necessary. In the case of a devise, the title never vests in the executor, and the devisee takes at once, subject to any

burden which the law imposes. And in *Kennedy v. Shaw*, 43 Mich. 359 (5 N. W. Rep. 396), it was held that such property could not be reclaimed without necessity; and that an amicable settlement of an estate, and the resignation of the administrator, were a sufficient consideration for a promise by one of the family to pay the debts of the estate. So it was held in *Mower's Appeal*, 48 Mich. 441 (12 N. W. Rep. 646), that a residuary devisee and legatee, under a will not probated in Michigan, had a vested interest which authorized him to appeal from a decree settling the Michigan administrator's account. And it is also held that the probate of a will relates back to the death of the testator, so that transfers by legatees made before probate, and actions of ejectment brought by devisees before probate, are validated by the probate. *Allison v. Smith*, 16 Mich. 429; *Sutphen v. Ellis*, 35 Id. 446; *Richards v. Pierce*, 44 Id. 444 (7 N. W. Rep. 54).

An executor, as such, has no estate in devised land, and a residuary legatee, even under an ordinary administration, could only be subject to have his title interfered with when needed for the payment of debts, and in that case would not be personally liable to any extent for such debts. The only reasonable object of such a statute as ours allowing such a legatee, if executor, to give a bond merely to pay debts and legacies, leaving out all conditions of inventory, accounting, and conforming to the orders of the court of probate, must be to take the estate entirely out of the hands of the court, and substitute the bond for the assets. If bound to pay all the debts, and still liable to have the lands and other property subjected to administration, there could be no advantage gained and no reasonable purpose subserved. The reasonable meaning of the statute is that the party shall do whatever the condition of his bond calls for, and no more. The general bond, as before pointed out, specifies the whole duties of an executor. The substituted bond covers only the payment of debts and legacies. On the other hand, under the general

bond, the debts and legacies are payable out of nothing but assets of the estate. Under the substituted bond, they are payable whether the estate has assets or not, and if the assets fall short the shortage does not lessen the liability. The several decisions made on questions arising under the Hatheway and McKeown wills exemplify most of the principles which are involved in this case.

The first of these cases is *Hatheway v. Sackett*, 32 Mich. 97. Gilbert Hatheway made a will which contained several bequests to various persons and purposes, and made James S. P. Hatheway executor and residuary legatee. Among other things the testator made a bequest to the village of New Baltimore for a school. James S. P. Hatheway gave a residuary legatee's bond. The village sued in the name of the judge of probate, to whom the bond ran, to recover the legacy. It was claimed in defense that the legatee could not sue until an order had been made by the judge of probate directing its payment, and that no suit lay for a legacy at law. It was held that, the bond being absolute to pay debts and legacies, no order of payment was required, and it was recoverable under the terms of the bond, at all events.

The next case, of *Hatheway v. Weeks*, 34 Mich. 237, resembled this case somewhat in its circumstances, but from an opposite stand-point. It was brought to have the estate restored to one of ordinary administration, because the bond had been filed under a mistake of fact. The general outline was that the estate had been supposed to be worth over $200,000, and the bond given accordingly, whereas $60,000 in government bonds, assumed to have been on deposit, were not to be found, and an item of $80,000 turned out worth only $50,000. Other similar deficiencies appeared. In view of these facts, it was prayed that the estate might be put in the ordinary course of administration, and the assets marshaled and applied in the usual way, ratably on debts and legacies, and that the obligors be relieved from the special

bond.   It was held that the hardship of the particular case could not be regarded, and it must be decided on the principles which would apply to other cases.   The Court then declared what was the meaning and effect of the statute, and referred, as we have done to some extent, to the rules applicable in ordinary cases, and the requirements of the ordinary bond, and the duties of the executor as occupying fiduciary relations in the care and disposal of the property and obligation to account for it.

It then proceeded to show that under the residuary legatee's bond the property became his absolutely, so that there was no duty to creditors and legatees in its management and disposal, and their only remedy was on the bond, and they had no claim against the assets.   It was held that when a residuary legatee gives the special bond, and gets control of the property without accountability for it, there could be no restoration, and the case must stand by his voluntary election.

If the assets had still remained bound to the creditors, as defendant in this case claims they are, that case would not have been properly decided.   It is not beyond the power to rectify vital mistakes, and it would have been very inequitable to give the creditors both the fund and the personal liability for which there was no consideration.   It is only on the ground that the bond has been substituted for the fund that the case is founded.

This same principle was more distinctly applied in *McElroy v. Hatheway*, 44 Mich. 399 (6 N. W. Rep. 867).   There a surety on the legatee's bond filed a bill to compel the application of the assets to the payment of debts and legacies, and for the appointment of a receiver to preserve them for that purpose.

The two concurring opinions in that case, while intimating that cases existed where sureties could be protected against the diversion and mismanagement of funds, held that such could not be the case where the property belonged absolutely

to the principal in the bond, and that the title of a residuary legatee could not be meddled with. This was pointed out at length in the opinion of Judge COOLEY, which was concurred in by his brethren, holding that the assets did not constitute a trust fund, but had become the absolute private property of the residuary legatee, not distinguishable from any of his other property, with which neither sureties, legatees, nor creditors had any concern whatever. The opinion concludes as follows:

" We cannot distinguish this case on any grounds but such as would entitle the parties concerned to demand a regular administration; and that would defeat the purpose of the statute which authorizes the residuary legatee to give bond for the payment of all demands, and receive the estate as his own."

Before any further litigation came up for review in the Hatheway will, the will of John T. McKeown, and the residuary legatee's bond under it, became involved in very much the same way.

In the case of *Durfee v. Abbott*, 50 Mich. 278 (15 N. W. Rep. 454), one Culver sued for a debt due him from the estate of McKeown. The proof of this claim was found in its allowance by the judge of probate on an opening of the commission, and a time of hearing set and notice given; the order for notice purporting to have been made by consent of the attorney of the residuary legatee. The opinion in that case discussed very fully the difference between ordinary administration and the case where bond is given by the residuary legatee, and held that the judge of probate had no further power to bring in parties or creditors to have claims settled; that the bond put an end to the administration; and that the settlement of claims became a personal matter of the executor and the claimant, to be disposed of in their own way.

It was further held, which becomes important in another phase of the case now before us, that constructive notice is not sufficient to bring persons before the probate court,

except in those cases in the ordinary course where such notice is provided for by statute; that it was only where proceedings were *in rem* that such a course was permitted; and that there was no longer any *res* before the probate court, because the assets had become the private property of the legatee, and were no longer a fund; so that the legatee was liable, if at all, personally as for a debt he had assumed to pay.   The demand, being a personal one, must be sued as such on personal service of process or its equivalent.   The allowance of the claim was held void, and no evidence.   Mr. Culver afterwards brought a new suit on the claim itself, and prevailed, as will be seen hereafter.

In the same volume (*Durfee v. Abbott,* 50 Mich. 479, 15 N. W. Rep. 559) a similar doctrine was applied, but this time against the residuary legatee in part, and in part against creditors.   Suit was brought by two legatees, and the defense rested chiefly on an alleged settlement by promissory notes extending the time of payment of the legacies.   It was held that the probate court had, in case of a residuary legatee's special bond, no power to extend the time to pay legacies, because the bond put an end to the administration, and the debts and legacies became his personal liabilities, and any extension of time to him without the consent of his sureties discharged them.

In *Hilton v. Briggs,* 54 Mich. 265 (20 N. W. Rep. 47), it was held that in an ordinary administration no personal liability could be created against an administrator without personal notice.

In *Wheeler v. Hatheway,* 54 Mich. 547 (20 N. W. Rep. 579), where both parties brought error, property which had belonged to Gilbert Hatheway, and used by one of his legatees, was allowed to be set off in a suit to recover her legacy; and in view of a new trial, and questions which would arise under it, the doctrine was again asserted that the giving and

approval of a residuary legatee's bond put an end to the administration.

In *Culver v. Judge of Superior Court*, 57 Mich. 25 (23 N. W. Rep. 469), where the superior court of Detroit had undertaken to stay Culver's suit for a deficiency on foreclosure, it was held he had a right to sue on the residuary legatee's bond without the leave of that court, as an independent undertaking not involved in the chancery foreclosure.

In *Wheeler v. Hatheway*, 58 Mich. 77 (24 N. W. Rep. 780), an attempt was made on Hatheway's behalf to induce this Court to qualify what was said in *Hatheway v. Weeks* concerning the relations of the residuary legatee's bond to the administration, and the mistake in the condition of the assets, and it was claimed that Mrs. Wheeler ought only to take her ratable share in the actual assets. But this claim was disapproved. It was also insisted that Mrs. Wheeler's claim should have been presented to the probate court and proved. But it was held this was settled otherwise by former decisions.

To hold that these decisions are no decisions, and that the rulings are not to stand as precedents, would be to overthrow the force of our judgments as rules of property and of conduct, and throw the law, as declared, into confusion. The cases cited for our consideration now have been cited before, and have not been regarded as authorizing our statutes to be applied as defendant now seeks to apply them. I am not, for myself, prepared to allow any weight whatever to outside precedents on matters where we have our own. Our people are not subject to the authority of foreign tribunals.

But I do not think there is any considerable analogy between the laws of Massachusetts and our own on any question involved here. While there are some features common to us with several other states and with England, the statutes of Michigan concerning residuary legatees were not adopted

in their present form from those places, and the differences bear directly on the questions involved here.

As already pointed out, our statutes in ordinary cases require the entire business of administration and distribution to be conducted in the probate court. Inventories, which are necessary for accounting, the proof of debts, the sale of real estate, the accounting, and all other matters of administration, appear in that court. It has complete jurisdiction *in rem*, and draws to it every incident of its disposal.

Prior to our statutes of 1846, which are now in force, the law was different. From the early days of the territory, under laws selected from Vermont, the only estates completely under the direction of the probate court were such as were represented as insolvent, and those were managed just as all estates are now managed, so as to make all but preferred debts solvable ratably. But by the act of 1809 (2 Terr. Laws, 13–36) the executor's bond was only to file a true inventory and to account, and, while the residuary legatee was authorized to give a bond for payment of debts and legacies, no further reference was made to it. But, while creditors were required to prove their debts, this was chiefly to enable the executor to find out whether the estate was insolvent; for, if not insolvent, debts were collected out of the assets by execution. By that law the probate court could license sales, and the executor could turn out property on appraisement to pay debts. By the Revision of 1827 the power to license sales was confined to the Supreme Court and county court, and subsequently the probate court received concurrent power. 2 Terr. Laws, 454, 696, 710. But in all those laws the creditors enforced their debts by suit and execution, and the law specially exempted from inventory all property exempt from execution; and in all but the law of 1809, which was repealed by the legislative council, no claims were presented in the probate court except in the case of insolvent estates.

The State Revision of 1837–38 followed the existing prac-

tice in its general policy, by confining the ratable payment of debts out of assets to insolvent estates, and by leaving creditors in other cases to suit and execution. Licenses, as before, were given by Supreme and circuit courts, and by the probate court. The executor was allowed to give public notice of his appointment, and was protected in paying debts against all persons not giving him notice of their claims, and all suits were governed by a short statute of limitations. In case of debts that did not accrue within the short period, they had to be presented to the judge of probate before the estate was closed, but his allowance did not bind the estate (Rev. Stat. 1838, p. 287); and an executor was not liable to suit after assets exhausted, if he paid debts without notice (pages 288, 289).

The Revision of 1838, by part 2, tit. 4, c. 1, § 3, introduced a part of the section now existing, concerning residuary legatees' bonds, expressly allowing the executor who is such legatee to give bond conditioned to pay all debts and legacies, but it differs from the present statute in various important particulars. In the first place the laws of 1838 required the usual bond to be conditioned:

1. For a true inventory.
2. For administration of assets.
3. For accounting.

But it did not contain the fourth requisite of our statute, which is:

"To perform all orders and decrees of the probate court by the executor to be performed in the premises."

The old probate court had nothing to do with the payment of debts, which were enforced by other courts. In the second place the laws of 1838 did not provide that the condition to pay debts and legacies should be the only condition of a residuary legatee's bond, while the present law is express on that subject. Rev. Stat. 1846, p. 283.

In the third place, the laws of 1838 contained a section

corresponding with the Massachusetts section, which declared expressly that the giving of the residuary legatee's bond should not release the creditor's hold on the real estate, which might be taken and sold on execution by any creditor as if the general bond had been given. Section 4, p. 277. This section was left out of the Revision of 1846, and must have been left out for some purpose; and the only conceivable reason is that there is no sense in compelling a legatee to become personally liable for debts, and yet to have no title to the assets. The Massachusetts decisions are in harmony with the law of 1838, which left the assets liable to appropriation by creditors in the only way by which the law provided for their application to debts. But under our statutes, since 1846, the creditors have never had any right to pursue the assets, and they have been compelled to look to the executor's bond in case they are not paid voluntarily. When the statutes say the only condition in a residuary legatee's bond shall be the payment of debts and legacies, they expressly exclude any duty to retain the assets subject to claims and administration. Exempting the bond from the only conditions which bound the assets cannot be construed as requiring by implication what is expressly excepted. It is also not unworthy of notice that under the Massachusetts statutes it is not a matter of right in the residuary legatee to give the special bond, but it is within the discretion of the probate court to allow it in case the other bond is not necessary for the protection of parties interested, and the condition of the bond even then contemplates payment, not only of debts and legacies, but also of probate allowances, which could not be made if the administration dropped. And beyond this, express provision is made, not only for giving nominal bonds in certain cases, but also for requiring new and larger bonds, if required by change in circumstances or any other sufficient cause. Chapter 3, Revis-

ion Mass. 1885. This last provision will require further attention presently.

The differences between the old laws and the present ones, in regard to residuary legatees are so vital, when considered also in reference to the present system of a ratable application of assets in payment of debts in the probate court instead of their enforcement in other courts, so as to give priority to the first levy, and leave the latest comer the risk of getting nothing, that decisions made under the old system can have no application under the changed law in the particulars involved in the present controversy.

But as the whole matter has been determined by our own decisions, we should follow them, even if the changes had not been so radical.

If the effect of giving the residuary legatee's bond is to remove the estate from the course of administration, and to end the jurisdiction of the probate court *in rem*, then that court cannot regain it without some statutory authority. No court has general power to recall to its control a case that has gone out of it. The purpose of the statute being to put the residuary legatee, as such, in control of his own property, his official character thereafter, if it exists at all, is formal and not essential. He has no further duty to perform officially, and no security is needed from him as such. And, even if further security could be required, it could not, without legal provision to that effect, reinstate the case for administration in the ordinary way. Under the old laws the administration was never interrupted.

But even under the old laws the probate court had no power without statute to require new bonds, or to affix any penalty for not giving them. In the absence of statute, such jurisdiction as existed anywhere to require security was vested in equity, and was governed by acknowledged rules. By the statutes of 1838, p. 309, § 37, the power to require a new bond was vested in the Supreme and circuit courts as well as

in the probate court; and it was a power strictly limited to cases where the sureties were insufficient, and did not cover any case where the court had once settled the amount of the bond. It was not given as a mere incident to probate jurisdiction, and could not very well be included in that. It is easy to see that great abuses might follow the unlimited possession of any such power, and defeat the purposes of a testator by depriving the person he has chosen to manage his estate of the control of it. In the Revision of 1846 it was not deemed proper to make statutory provisions for any change in the bond, and if parties looked to their interests at the proper time no case can readily arise afterwards which could not be rectified in equity.

In order to undo the action which fixed the rights of a residuary legatee, if it could be done at all, that proceeding must be set aside by some adequate remedy, so as to leave it as if it had not been done. And this, in the absence of statute, must be, if at all, by bill in equity for relief against it as either fraudulent in fact or so inequitable as to be fraudulent in law. If, as we have decided, the object of the bond is to take the estate out of the course of administration, there is no longer any need of an official executor, and the office is practically terminated. Removal from office would not be available, for there is no office to be removed from. Until the new condition is set aside, there is nothing in the probate court to move in. There is not now, and never has been, any law which allows a judge of probate to exact or to receive a new bond containing different conditions from the old one. There were two laws in 1875 on that subject, and neither of them authorizes what was done here. Act No. 50, p. 47, is entitled—

"An act to authorize judges of probate to require new bonds from executors, guardians, administrators, special administrators, and trustees."

This statute is confined by its terms to cases where the

judge of probate has a right, if he chooses, to act on his own
motion when he thinks a change necessary, and this could not
be the case where the control of the assets has passed to the
legatee.    There is nothing in this law to authorize an
additional or larger bond, and its evident purpose is to secure
adequate sureties.   It does not provide any penalty or give
the court any power to remove from office for any failure to
give a new bond.   It was not claimed on the argument that
this statute covered the case.   It was also peculiar in not fix-
ing the necessity of any notice except such as the judge of
probate should direct, and, as the only thing he was author-
ized to do was to discharge the old sureties in case a new bond
was filed, it seems to have been rather a renewal of the old
provision allowing sureties to be relieved than for the security
of the estate.   At the same session, and very soon after Act
No. 50 was passed, Act No. 162, p. 191, was also passed.
That is entitled—

" An act relative to changing the sureties on bonds by
judges of probate."

It is under this latter act that defendant claims to have
acted, and evidently did act.   This act provides that a
petition shall be filed by " any person interested," and author-
izes action " after notice to the principal in the bond."   A
subsequent section allows sureties to seek a discharge, " after
due notice to all parties interested," and it provides that if
the principal fails to give a new bond he may be removed,
and some other person appointed in his stead.   The body of
this act provides for a new bond—

" When the sureties or the penal sum in any bond given to
the probate court are insufficient."

But the title of the act contains no reference to changing
the penal sum, and so important an interpolation cannot be
introduced under a title which is not only specific, but which
covers precisely and fully all that was provided under the

Revision of 1838, and which had for some reason been left
out in 1846, and which was confined to a failure in the suffi-
ciency of the sureties. Rev. Stat. 1838, p. 309. It was in
that statute regarded as a power not belonging to the probate
jurisdiction as incidental, and, while the probate judge was
allowed to act, the Supreme and circuit courts also had
co-ordinate power. None of them, however, were authorized
to do more than replace the old sureties. It is to be remem-
bered that the requirement and change of security from
executors was never a matter of original probate jurisdiction,
but belonged to the jurisdiction of a court of equity, and was
enforced on a case made of danger to the safety of parties
interested. Story, Eq. Jur. §§ 603, 604; *Dillon v. Lady
Mount Cashell*, 4 Brown Parl. Cas. 312. While there is no
doubt a necessity for jurisdiction somewhere to guard against
fraud or accident, it is not necessary to vest that power in the
probate court, and in many cases that court could not have
power or be at all suitable to bring in the parties and enter
on the inquiries essential to do justice. The general jurisdic-
tion over persons and things, at law and in equity, belongs to
the circuit courts, and any attempt to divest parties of a con-
trol once vested in them must generally be outside of the
functions of any prerogative court.

This record itself shows the impossibility of doing justice
in the probate court under any such stretch of jurisdiction.
It has been held repeatedly in this Court that no one is
bound to take notice of action in the probate court that is
special, or not within the statute as to the method of giving
it. *Durfee v. Abbott*, 50 Mich. 279 (15 N. W. Rep. 454);
*Hilton v. Briggs*, 54 Id. 266 (20 N. W. Rep. 47); *Frost v.
Atwood*, 72 Id. — (41 N. W. Rep. 96). It has also been
uniformly held that an executor cannot sell devised estate of
which the devisee has taken possession and control, and that
such a sale is void. *Atwood v. Frost*, 51 Mich. 360 (16 N.

W. Rep. 685), and 59 Id. 409 (26 N. W. Rep. 655); *Eberstein v. Camp,* 37 Id. 176,

Even the Massachusetts and the old Michigan statutes, which purported to allow creditors to pursue lands of residuary legatees, confined the right to lands not sold in good faith. Here we have an alleged creditor, waiting nearly nine months after the residuary legatee's bond had been approved, never appealing from its approval, not claiming it to have been improperly approved, or to have been ignorant of it, asking a new bond on the sole ground of the inadequacy of the penalty. The statute only requires notice to the principal in the bond, and does not authorize publication. It is a new proceeding, which is not made by law notice to any one but the principal. Before the time expired for a new bond the property now in suit was conveyed, and the residuary legatee had given a warranty deed to S. Titus Parsons for what purported to be a large pecuniary consideration. It is quite likely this was not an honest sale, but Mr. Parsons could not be brought into the probate court to answer that inquiry. It was a sale the residuary legatee had power to make, whether she had given any bond or not, and which she could not have revoked had she remained in office, or become executrix under a general bond. Moreover, it is expressly provided by section 5864 of Howell's Statutes that all acts of an executor before the revocation of the letters of administration shall be as valid as if they had not been revoked. It was not within the power of the probate court to assume the powers of a court of equity to set aside a sale, and bring a purchaser into its jurisdiction to inquire into his rights, which on their face are valid; and a failure to give bond does not of itself vacate the appointment. *Carpenter v. Harris,* 51 Mich. 223 (16 N. W. Rep. 383).

The difficulty does not stop here, nor is it removed or qualified by subsequent action, which is still less maintainable. The doctrine is settled that, before a probate court can inter-

fere at any one's application, he must show affirmatively a sufficient right to interfere, and sufficient reason for so doing; and a failure to do this is not merely irregular, but it is jurisdictional, and renders the action void. The showing must appear in the petition directly. *Besancon v. Brownson,* 39 Mich. 393; *Shipman v. Butterfield,* 47 Id. 489 (11 N. W. Rep. 283). This petition, or rather these petitions, should show the petitioner is a creditor whose rights will be jeopardized unless he gets the relief desired, and, according to all the doctrine in such cases, should show why it has become necessary, and how matters have changed so as to require it.

The petitioner here does not show that the necessity is any different from what it was when the first bond was given, nor that the former action was not voluntarily acquiesced in, nor why no appeal was taken. It does not show that Mrs. Cook was not abundantly responsible personally. It fails in the first elements required in such contingencies. But it is also fatally defective under our own decisions in just such a case. In *Breen v. Pangborn,* 51 Mich. 29 (16 N. W. Rep. 188), it was held that a person not personally served was not bound by proceedings for administration on behalf of one who did not show a superior right to apply. And so in *Gillett v. Needham,* 37 Mich. 143, it was held the jurisdiction was always questionable by parties interested in it. But the case of *White v. Spaulding,* 50 Mich. 22 (14 N. W. Rep. 664), is perhaps more directly in point, for there proceedings to remove an administrator were held jurisdictionally bad for lack of a proper showing in the petition. It was held there that it was not enough to aver that the person petitioning is a creditor. It must appear by the petition how he became so, and what is the nature of his claim; and this is in accordance with the universal rules of practice. Unless the nature and facts of the claim are averred, no one can be expected to be able to meet the issue of the title to apply. In this case, while we have no means of passing on the facts, it does appear

that petitioner did not present its claim when the bond was accepted, and it does not appear from the petition that it was a claim which ever existed against Olney Cook. There is no allegation in the petition to remove Mrs. Cook beyond the averment " that it is interested in said estate as a creditor of said deceased." It appears affirmatively that the prayer of this petition was granted *ex parte* on the day it was filed, and there is nothing to indicate notice to anybody. At this time Mrs. Cook had no further interest in the property in question, and could not by her acts or silence prejudice the rights of any one else.

Mr. Barnard's appointment as administrator *de bonis non* was not valid unless the other proceedings were valid, and, whether valid or not, could not bring back into the estate property already disposed of. And no one without personal notice could be bound to suppose that commissioners were validly appointed, or that the claim they allowed could bind the sold property. Before these commissioners acted, the title had passed to complainant, and she was in possession openly and notoriously, under a recorded warranty deed, which she took in good faith and for full value.

The petition for leave to sell was not made till July 2, 1879, a year and more than three months after the commissioners reported, and a year and ten months after the new administration. The license was granted more than two years after the new administration, and the sale was made more than five months after the license. Complainant was not notified of any of these movements, and after the sale defendant, as admitted, purposely avoided making any attempt to enforce its rights, if it had any.

It is also singular that in this present suit there is no attempt whatever to explain what was the nature of defendant's claim, and in what way it arose. Mrs. Cook was produced by the defendant, and is interested in getting the property applied in her own favor, and her testimony does

not prove the debt, or show anything definite about it. If it was an indorsement, or if it was secured, as most savings-bank paper is required to be, by mortgage, those facts would have been material in determining the need or propriety of further security.

With a title which is legal on its face, and in conformity with law, complainant had a right to a decree unless defendant showed distinct and superior equities, not only as against Mrs. Cook, but as against complainant.

I do not think any such defense is made ᴏⁿ ⁱ

SHERWOOD, C. J., concurred with CAMPBELL, J