## CHARLES EBERSTEIN v. FREEMAN CAMP.

*Replevin of Specific Bequests from an Executor.*

Specific bequests, especially if needed for household or husbandry purposes, should be delivered at once to the legatee, unless likely to be needed to satisfy claims on the estate.

An executor has no right to withhold his assent to the legatee's immediate possession of specific bequests, unless there is a deficiency of assets.

The executor's assent to the legatee's possession of a bequest is presumed from his leaving him in possession of it.

An executor cannot arbitrarily revoke his assent to the legatee's possession of specific legacies; and replevin lies against him if he resumes control of them.

Contribution from specific legatees to meet claims against the estate is provided for in Comp. L., §§ 4355-6.

In an action of replevin brought by a legatee against the executor for a specific bequest, testimony from the legatee tending to show that the property claimed had been promised to the legatee before the testator's death, but not as a gift *in præsenti* or *causa mortis*, is inadmissible.

A judgment will not be disturbed for a ruling, the correction of which could not possibly change the result.

Error to Kalamazoo. Submitted June 15. Decided June 20.

REPLEVIN. The facts are in the opinion.

*Arthur Brown* for plaintiff in error.

*May, Buck & Powers* for defendant in error. An executor has no right to the possession of property specifically bequeathed, unless the assets of the estate are insufficient to pay the debts of the testator. *Wallace v. Wallace,* 23 N. H., 149. And he cannot exercise his right to such property needlessly, arbitrarily or oppressively. *Holbrook v. Campau,* 22 Mich., 288.

CAMPBELL, J. In this case Camp replevied from Eberstein a reaper and horse rake, which had belonged to Henry

Camp, father of Freeman.    Henry Camp died in January 1873 leaving a will, which was proven immediately by Eberstein as executor, and commissioners were appointed in March 1873, who reported debts in September to the amount of $849.65.    The uncontradicted testimony showed that Eberstein had sold personal property to the amount of over $1,300, with a part of which he paid some debts, and as to the balance he said he could not tell what had become of it.    In December 1874 he took away from Freeman Camp the articles in question which had been specifically bequeathed to the latter by his father's will, whereby it was expressly directed that the debts should be paid out of his personal property not specifically bequeathed.    Up to that time he had left these articles with other specific bequests in Freeman's favor in the latter's possession.

These facts being established and not disputed, several questions arose on the trial and some of them come up for review.    The judgment below was in favor of Freeman Camp.

Upon the part of the plaintiff below there was evidence introduced by his own oath of a gift made to him by his father before death.    The testimony as set forth appears to relate to a future and not a present gift of these particular articles, and did not tend to show either a gift *in præsenti* or *causa mortis*.    No doubt it referred to the testamentary disposition afterwards made; and so far as this gift was concerned it was erroneous to consider it.

But the question still remains whether as the case was presented, the jury could lawfully have found a verdict for the defendant below.

Upon so much of the case as related to the rights of an executor, the court charged expressly that if the property was taken by Eberstein in good faith as executor, and if it was needed, or if there was any probability of its being needed for the purpose of paying debts, the taking would be justified.

Our Compiled Laws, in conformity with the common law, authorize specific legatees, with the consent of the executor, to possess their legacies before settlement, and

when they do so they are liable to contribution, in case any claim arises chargeable on their bequests. Comp. L., § 4355. The statute does not in such case authorize the executor to seize the specific legacy of any one and turn 'him over to proceedings for contribution against the rest, nor until such liability is apportioned by the court. §§ 4355, 4356.

That an executor may originally retain possession unless otherwise ordered by the probate court under § 4353 seems to be still the rule as at common law. But propriety would dictate that where there is no probability of any occasion for the contrary, specific legacies necessary for household or husbandry purposes should be left to the legatees, as was done in this case.

It is well settled at common law as well as in equity that an executor cannot arbitrarily revoke his assent, (2 Redf. on Wills, 563, and note), and that an action at law will lie against him thereafter to recover the specific bequest. *Doe v. Guy*, 3 East., 120; *Atkins v. Hill*, 1 Cowp., 284. It was said by Lord Mansfield in the latter case that if an executor has assets he has no right to withhold his assent, and that equity will compel him to give it. The object of giving specific bequests is held to be to expedite their payment, and the courts have so acted. In *Fontaine v. Tyler*, 9 Price, 94, it was held such a legacy of stocks was due at once on testator's death; and the authorities are settled that the right to dividends and the liability to assessments begins at that time. Id.; 2 Redf. on Wills, 469, 583, 566, and cases cited.

The enforcement in equity after assent is never refused when necessary, and is in accordance with what was said by Lord Mansfield. In *Chaworth v. Beech*, 4 Ves., 555, where executors retained a security specifically bequeathed, without any necessity, as assets, and it depreciated, the legatee was held entitled to have the loss made good, as of its original value. The ground of this decision as stated, and as afterwards referred to in *Innes v. Johnson* in the same volume, on page 573, was that the executor "should have put it in the hands of the legatee." And in *Kirby v. Potter*, 4 Ves., 748, 751, it is said ·by the Master of the

Rolls, "every one knows, a specific legacy of a *corpus* passes from the death of the testator. It vests immediately from that time." In *Northey v. Northey*, 2 Atkyns 77, it was held that in equity no assent was necessary to hold the executor liable on a specific legacy, and that the rule requiring it as a ground of action only applied at law. In *Williams v. Lee*, 3 Atkyns 223, it was declared that trover would lie against him when he had assented. And in 1 Ver. 94 it is held in conformity with the more modern decisions that assent may be compelled if unreasonably refused. Com. Dig. "Chancery," 3 G. 4; "Administration," C. 8. Assent is presumed where the legatee is left in possession. 2 Redf. on Wills, 562, and notes. This subject was discussed in the recent case of *Proctor v. Robinson*, 35 Mich., 284.

The facts which were undisputed showed not only assent, but—what is also important—had no tendency to show any ground for withholding it. The court below, nevertheless, held that good faith in the executor would justify his taking, and in this certainly took extreme grounds in his favor.

In our opinion there was no testimony in the case which could have authorized a verdict—as matter of law—in favor of the plaintiff in error, and the judgment cannot be disturbed on account of any rulings which could not have possibly changed the result; and it should be affirmed, with costs.

The other Justices concurred.