WILLIAM FROST ET AL., EXECUTORS, ETC., v. SARAH J.
ATWOOD.

[See 51 Mich. 360; 59 Id. 409.]

*Wills—Executors and administrators—Debts of testator—Contribu-
tion by devisees—Sale—Subrogation—Equitable lien.*

1. A decree for contribution by devisees and legatees in payment
   of debts and other liabilities of the estate, under How. Stat.
   § 5820, is no more than a personal judgment, enforcible by exe-
   cution, and this was the ground of the decision in *Atwood v.
   Frost,* 51 Mich. 360; 59 Id. 409.

2. How. Stat. § 5820, does not provide for proceedings at law or in
   equity as supplementary to the probate decree therein provided
   for, but as elective remedies, which always existed independ-
   ently, and were left untouched.   Such proceedings, if at law,
   must be against the parties liable to contribution *severally,* but
   if in equity may be against them *jointly.*

3. Equity will not decree a lien upon devised land, for the pur-
   chase price paid on its sale by an executor to enforce a decree
   of the probate court for contribution by the devisee towards
   the payment of the testator's debts, even though the money
   was used by the executor for that purpose, such sale being
   void.

4. The following propositions are summarized from the opinion of
   Mr. Justice CAMPBELL:

   *a*—Liens can only be created by agreement, or by some fixed
   rule of law, and it is not one of the functions of courts to
   create them.

   *b*—Every one is bound to satisfy himself of the *authority*
   under which a judicial sale is made, and buys at his peril.

   *c*—Where individuals sell their own lands and receive pay
   for them, there can be no want of authority, and the question
   is only one of title.   But a sale made by quitclaim deed, with-
   out covenants, and without fraud or misrepresentation, does
   not entitle the purchaser to reclaim the money.

   *d*—An executor has no power to dispose of lands by virtue
   of his office, and whenever he undertakes to meddle with lands
   without authority, he cannot bind them any more than a
   stranger.   The owner, whether devisee or otherwise, is in no
   way affected by his action, which is void for all purposes.

*e*—In all probate sales, valid or invalid, the officer making the sale receives the money, and usually appropriates it. But it has never been supposed, and it is not legally true, that such use creates any lien on the premises unlawfully sold. What he receives without lawful authority does not concern the estate, and he can no more create a lien by spending that money than by spending any other. If the estate owes him, he must pursue his remedy as the law gives it, and his claim must first be established before he can get any remedy. The use, if made, is not made for the benefit of the particular piece of land that he attempted to sell, but for the whole estate; and, if it becomes a claim, it is a claim against the whole estate, and not against a part of it.

*f*—It was held in *Probate Judge v. Abbott*, 50 Mich. 278, that there is no power to dispense with personal service in any case except in cases provided for distinctly by statute.

*g*—The statutes relating to contribution by devisees and legatees do not contemplate that property once turned over to them shall continue to be specifically bound for any possible future deficiency, and it was held in *Eberstein v. Camp*, 37 Mich. 176, that the interest of the legatee vested at once, and should not be needlessly interfered with by the executor.[1]

*h*—The only person authorized by law to enforce contribution for the payment of debts is the executor. He has no power to sell or grant this authority to any one else. If he seeks relief in the probate court he must enforce it by execution.

Appeal from Kalamazoo. (Hooker, J., presiding.) Argued October 25, 1888. Decided November 28, 1888.

Bill to declare purchase money, paid for land sold by an executor under a void license, a lien on the land. Complainants appeal. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Howard & Roos* (*A. M. Stearns,* of counsel), for complainants, contended:

1. A purchaser at a void foreclosure sale, or his vendee, is subrogated in equity to all the rights of the original mortgagee, and such a sale does not extinguish the mortgage; citing Jones, Mtg. §§ 874—877 *et seq.*, and authorities cited, *French v. DeBow*, 38 Mich. 708; *Lockwood v. Bassett*, 49 Id. 546.

[1] See *Rough v. Womer*, 76 Mich. 375.

2. Where an innocent purchaser at an execution sale gets nothing by his purchase, he may have redress in equity against the execution debtor whose debt he has paid; citing *Julian v. Beal*, 26 Ind. 220; *Hawkins v. Miller*, Id. 173.

3. Frost, having paid for the land in good faith, and the money having been used to pay the debts of the estate, he is to be subrogated to the rights of the creditors and executor, and has a lien on the land for the amount of the assessment made by the probate court; citing *Blodgett v. Hitt*, 39 Wis. 169; *Valle v. Fleming*, 29 Mo. 152; *Bright v. Boyd*, 1 Story, 478; *McLaughlin v. Daniel*, 8 Dana, 182; *Howard v. North*, 5 Tex. 290; *Ins. Co. v. Aspinall*, 48 Mich. 238.

*Dallas Boudeman*, for defendant, contended:

1. Act No. 138, Laws of 1877, limiting the time during which the real estate of a deceased person might remain chargeable with the payment of his debts to six years, was applicable to estates in process of settlement when it was passed; citing *McDaniels v. Walker*, 44 Mich. 83; and, under the construction placed upon it by this Court, the claim of debts as against Benjamin Atwood's real estate expired nearly eight months before Frost claims to have obtained any rights, and more than three months before the contribution proceedings relied on by complainants, which were an idle ceremony, creating no lien and enlarging no rights.

2. This suit was commenced more than six years after Frost claims to have obtained his deed, and the claim is substantially one for money paid and laid out for the use of another. Such an action, if at law, is barred in six years, and equity will follow the law in this case; citing *Smith v. Davidson*, 40 Mich. 632; *Seminary v. Kiefer*, 43 Id. 105.

3. The rule of *caveat emptor* applies; citing *The Monte Allegre*, 9, Wheat. 616; Rorer, Jud. Sales, §§ 131, 150, 174, 476, 528; and this Court has recognized this rule, and applied it in *Tenney v. Hand*, 32 Mich. 63. See, also, *Richmond v. Marston*, 15 Ind. 124; *Liedy v. Parks*, 4 Ohio, 469, 493; *Salmond v. Price*, 13 Id. 368; *Putnam v. Ritchie*, 6 Paige, 405; *Branham v. Mayor*, 24 Cal. 585; *Boggs v. Hargrave*, 16 Id. 559; *Laws v. Thompson*, 4 Jones, 104; *Halcombe v. Loudermilk*, 3 Id. 491.

CAMPBELL, J.    The bill of complaint in this cause was filed to establish a claim under a probate sale, which has been twice declared absolutely void by this Court, as illegal, and not merely irregular. *Atwood v. Frost*, 51.

·Mich. 360 (16 N. W. Rep. 685), 59 Id. 409 (26 N. W. Rep. 655.) Those were ejectment suits, in which Mrs. Atwood, the owner of the land, had been summarily ousted, and was driven to her action to regain possession. After her title was legally vindicated this bill was filed against her, based entirely on alleged equities claimed to have arisen in favor of the purchaser under the void probate sale. The court below dismissed the bill, and complainants appeal.

Although the facts appeared somewhat in the reports of the former decisions, it will be necessary to refer to them here, as far as required to explain the litigation. As in most such controversies, there is some matter in the record of no importance.

Benjamin Atwood of Wakeshma, in Kalamazoo county, died in 1874, leaving a will, whereby several specific devises of real estate were made to several devisees, and there were also made some money bequests and some general dispositions. To testator's widow and two of his sons bequests were made of money aggregating $1,200, but $1,000 of this fell back into the estate. To a daughter, Angeline Carney, a strip of land was given, 20 rods wide by 160 long. To his daughter Sarah Jane Dibol he gave the 40 acres now in controversy. To his daughter Cynthia Atwood he gave a designated tract, of about 120 acres. He devised for the benefit of a grandson, Clarence Atwood, another parcel, the size of which does not appear in the will. The rest of his real and personal property he ordered his executors to sell to pay debts and legacies, giving any unexpended balance to be equally divided between his son, Ephraim, and his three daughters. Sylvester Fredenburg was made executor.

The inventory valued the real estate in Kalamazoo county, a part of which was specifically devised, at $6,890, and in Calhoun county, at $5,640, and personalty.

besides household, at $2,109.18. The debts allowed were $3,792.44, which was less than 50 per cent. of the undevised property. The widow elected to take her dower, and it was set off in Kalamazoo county, covering part of the land in dispute. Defendant is the widow, but does not claim title as such.

As the personalty and the land not specifically devised largely exceeded in appraised value the debts and legacies, the devisees were allowed to hold undisturbed possession. The sum of $500 was used, without objection, for a monument.

Why the executor did not pursue the directions of the will and sell the necessary lands seasonably, under the power of sale therein contained, does not appear. But, for some reason, various licenses were obtained, and sales made with no apparently profitable result; for in 1880 the executor's account was settled, showing securities in his hands of $2,120.73, and debts unpaid to the amount of $4,353. In July, 1880, more than six years after probate of the will, the executor filed a petition setting out that all but the lands in Kalamazoo county, which were specifically devised, had been sold, leaving a balance of debts and expenses over $2,000, and praying that the deficiency be made up by resort to the legatees and devisees. The probate court found a deficiency of $2,232.27, and proceeded to estimate the value at that time of the devises and legacies, as follows: Angeline Carney's land was reckoned at $350, and she was held liable to contribute $110.25; Sarah Jane Dibol's land was estimated at $1,200, and she was charged $378; Cynthia Atwood's land was put at the value of $3,490, and she was charged $1,067.77; Clarence Atwood's land was reckoned at $1,950, and that share was assessed $614.25.

All these parties were ordered to pay their assessed sums in 20 days, and in default each parcel was to be sold

under a license which had been granted in 1879 for the sale of the lands belonging to the estate. Sarah J. Dibol resided in Indiana, and was served with notice by mail, if at all, and not personally, in the jurisdiction. The bill avers that the notice to all parties was by publication. There is no proof in the printed record.

On November 1, 1880, upon an *ex parte* petition filed on that day, and without notice to any one, the probate judge increased the charges against each devisee, and charged Sarah Jane Dibol with the sum of $431.57. The executor went on and sold her interest to William Frost for $445, on December 14, 1880; and in this way, if the sale had been valid, Mrs. Dibol would have been deprived of her whole estate to pay her share of the deficiency. In the suits before referred to, this Court held the sale void. And in both of these cases, without referring to any other objections, it was held that the only way to collect such assessments, if made by the probate court, and valid, was by execution against the debtor, and not by sale of the land.

In order to ascertain the relative titles and claims of the parties to this suit, some further explanation is necessary.

On July 15, 1875, Mrs. Dibol mortgaged her land to Charles C. Peavey, of Battle Creek, for $500. In October, 1878, a foreclosure sale was had under this mortgage to Mr. Peavey. On June 2, 1880, Peavey sold the land for $800 to defendant, Sarah J. Atwood, who went into possession, her deed being recorded December 16, 1881. At the time when the probate court undertook to make the assessments in question Mrs. Dibol's title had for some time been transferred of record to Peavey, and actually sold by him to Mrs. Atwood, who already had dower set off in a part of it.

The complainant William Frost, when he bid off these

lands, had no money to pay for them, and borrowed $2,000 of Elihu Kirby, and gave him a mortgage on this and other land. Kirby is dead, and Frost joined his personal representatives in filing this bill to charge the price paid to Mr. Fredenburg on the land, in spite of the illegality of the sale.

The only ground of relief relied on is that the money paid to the executor for the probate title, and used by him for the purposes of the estate, ought to be refunded for failure of consideration, and treated as a lien on the land to which title failed.

It is difficult to understand on what principle such a claim can be set up. No rule is better settled than that liens can only be created by agreement, or by some fixed rule of law. It is not one of the functions of courts to create them. *Bennett v. Nichols*, 12 Mich. 22; *Wright v. Ellison*, 1 Wall. 16; *Lyster's Appeal*, 54 Mich. 325 (20 N. W. Rep. 83); *Perkins v. Perkins*, 16 Id. 162; *Rowley v. Towsley*, 53 Id. 329 (19 N. W. Rep. 20.)

There is no reason for allowing the complainants to set up a lien in this case which would not apply with equal force to execution sales or other judicial sales under equitable or probate decrees and orders. But such a doctrine would be a novelty. Every one is bound to satisfy himself of the authority under which a judicial sale is made, and buys at his peril. It would be a contradiction in terms to hold a sale void for want of authority to make it, and yet valid enough to create a lien for the purchase money. Where individuals sell their own lands and receive pay for them, there can be no want of authority, and the question is only one of title. But a sale made by quitclaim deed, without covenants, and without fraud or misrepresentation, does not entitle the purchaser to reclaim his money. This bill is an attempt not only to give to a void probate sale the effect of a warranty

deed, but to go further, and bind the land itself, which was sold without right, for its repayment.

An executor has no power to dispose of lands by virtue of his office, and no such power was given by Mr. Atwood's will as to any land specifically devised. Whenever he undertakes to meddle with lands without authority, he cannot bind them any more than any stranger, The owner, whether devisee or otherwise, is in no way affected by his action, which is void for all purposes. Heirs or devisees are only bound by what he does legally.

It is difficult to see how the case can be affected by the use which the executor made of the money. In all probate sales, valid or invalid, the officer making the sale receives the money, and usually appropriates it. But it never has been supposed, and it is not legally true, that such use creates any lien on the premises unlawfully sold. What he receives without lawful authority does not concern the estate, and he can no more create a lien by spending that money than by spending any other.. If the estate owes him, he must pursue his remedy as the law gives it, and his claim must first be established before he can get any remedy. The use, if made, is not made for the benefit of the particular piece of land that he attempted to sell, but for the whole estate; and, if it becomes a claim, it is a claim against the whole estate, and not against a part of it.

It is a very serious question whether the action of the probate court in apportioning the deficiency was within the jurisdiction of the court in law or in fact. It involves all the elements of a suit at law, or a proceeding in equity for contribution. Leaving out of sight the important consideration that more than six years had elapsed after the probate of the will before any attempt was made to enforce these claims, the record indicates that no attempt was made to bring the parties interested before

the court, except by some unexplained form of public notice. So far as this particular piece of land is concerned, it was dealt with as the property of Mrs. Dibol, who had for some years had no interest in it, and who did not live in Michigan. If the land itself was to be charged for contribution, no proceeding could be valid that did not bring the owner before the court; and we have discovered no provision attempting to give such power to the probate court. It was held in *Probate Judge v. Abbott,* 50 Mich. 278 (15 N. W. Rep. 454), that there is no power to dispense with personal service in any case except in cases provided for distinctly by statute. There is no such statute in this case. The fact that Mrs. Dibol was treated as the proper person to contribute would of itself exclude any purpose of reaching her grantees. But as the whole power to compel contribution is statutory, the statute cannot be supplemented by creating charges which it does not authorize the probate court to make.

In the cases decided by this Court heretofore, the decisions went entirely on the ground that any apportionment lawfully made by the probate court would be no more than a personal judgment to be enforced by execution. We see no reason for receding from that doctrine.

The statutes relating to this subject do not contemplate that property once turned over to the devisees and legatees shall continue to be specifically bound for any possible future deficiency. It may consist of personalty as well as realty, and of stocks or securities as well as specific chattels. It was held in *Eberstein v. Camp,* 37 Mich. 176, that the interest of the legatee vested at once, and should not be needlessly interfered with by the executor. In the present case, the record does not show that if the executor had done his duty the debts would not have been fully paid within the proper statutory period,

without any deficiency arising. And when he sees fit to allow all parties to rest on the idea that they can do what they will with their legacies and devises, the statute gives him no power to recall them. By section 5818, How. Stat., provision is made for contribution by parties who have received their property. By section 5819 it is provided that, if any person liable to contribute is insolvent, the rest must make up his share, and, if dead, the claim must be proved against his estate. This is only consistent with the idea of a personal obligation, and not a claim on specific property. Section 5820 is the only section declaring how the liabilities shall be enforced. The probate court is empowered, by decree for that purpose, to settle the amount of the several liabilities, and how much and in what manner each person shall contribute,—

"And may issue execution as circumstances may require."

There is no provision declaring a lien, and none providing for its sale or enforcement. There is not even any provision directing that the execution shall bind the specific property.

The only person authorized by law to enforce contribution for the payment of debts is the executor. He has no power to sell or grant this authority to any one else. If he seeks relief in the probate court he must enforce it by execution.

Section 5820 also provides that the claimant may have a remedy in any proper action or complaint in law or equity. A proceeding at law could only be to obtain a personal judgment against some one person at a time. A proceeding in equity could be had to reach all parties bound to contribute in one suit. This section does not provide for proceedings at law or in equity as supplement-

ary to a probate decree, but as elective remedies, which always existed independently, and were left untouched.

Had the statute designed to create specific claims against the land, it would not have been silent as to means of enforcement. And it could not have lawfully omitted to provide for defense by persons who had bought out the property. A devisee whose interest has been disposed of could not represent his or her grantee for the purpose of binding property. It may make no great difference to the devisee what is done with the land in which he has no further interest. The statute contemplates that the devisee shall contribute, because the devisee has received what turns out to be more than his share. But it mentions only devisees and legatees. Probate courts have no general power to affect lands or reach third persons. It is only common-law and equitable tribunals that have general jurisdiction over persons and property. If the law, in a matter of this kind, had been intended to do more than fix personal liability, or to litigate the interests of third persons, it would not have been silent as to methods.

But all this has been already settled in the ejectment suits. The action of the executor in attempting to sell under the probate license was entirely beyond any power given him by law, and no rights could arise under it.

There can be no doubt that the second order, which increased the shares to be contributed, was void as entirely *ex parte*. And if the case were open to discussion on the general merits, there has been such delay, both before and since the attempted sale, as to require serious consideration, at least.

Some reference was made on the hearing to the case of *Detroit, etc., Ins. Co. v. Aspinall*, 48 Mich. 238 (12 N. W. Rep. 214), as bearing on this suit. It is only in point as holding that a mortgage given by a personal representative under license is void unless in full compliance with

law. There is nothing in the case which favors the idea that the advancement of money would create any lien on the land. If so there would have been no need of a mortgage, and no sense in holding it void. The creditor who advanced the money in that case was allowed to recover because his money was applied specifically upon a valid mortgage against the estate, and he was held entitled to be subrogated to the mortgagees, upon the familiar principle that a trust resulted to him on the application of his money on the mortgage to have it stand in his behalf. The subrogation was not in that case allowed to secure the lender on any more than was put into that mortgage. The balance was not protected by our decree. In the present case there was no claim open to subrogation, and no money lent to the executor or to the estate. Frost did not intend to become a creditor of the estate, but attempted to become a purchaser from a vendor who had nothing to sell. We think the decree dismissing the bill was right, and it should be affirmed.

The other Justices concurred.