DEHN *v.* DEHN.

1. EVIDENCE—NAMES—PRESUMPTIONS—PARENT AND CHILD—DEEDS.
   If father and son bear the same name, a conveyance to one by
   that name is presumed to mean the father, unless the testi-
   mony shows a different intent.

2. SAME—REAL PROPERTY.
   *Held,* that the evidence sustained the finding of the lower court
   that land claimed by father, Charles Dehn, and son, Carl O.
   Dehn, belonged to the former.

3. LIEN—EQUITY—PARENT AND CHILD.
   Expenditures for repairs and improvements made on the home
   by a son who resided with his parents, are presumed to have
   been made gratuitously, in the absence of any agreement,
   and do not entitle the son to a lien on the premises.

4. SAME—CONTRACT—MISTAKE.
   While a contract may be implied, as in the case of one who,
   under a mistake, makes improvements that benefit another,
   a son who makes a false claim to property of his father is not
   in a position to obtain equitable relief after failing to main-
   tain his claim.

5. SAME.
   Equity cannot create a lien; it can only declare one where the
   testimony equitably establishes an implied contract, liens
   can only be created by agreement, express or implied, or by
   some fixed rule of law.

6. ATTORNEY AND CLIENT—AUTHORITY OF SOLICITOR—COURTS.
   While the authority of complainant's solicitor cannot, as a rule,
   be questioned at the trial, it was proper to consider the point
   on the hearing in chancery, if no opportunity had been pre-
   viously given defendant to raise the question, and his solic-
   itor had first learned facts at the hearing upon which he
   based the claim. The court in which suit is begun is the
   proper forum in which to determine the question.

7. SAME—EVIDENCE.
   Where complainant, who was very old, feeble, and spoke German
   only, stated that he owned the home in which he lived, did not
   remember who paid the taxes, remembered making his mark
   on a paper brought to him in connection with the matter,

and it appeared from his solicitor's testimony that he obtained information from complainant, who expressed a desire to have suit begun against his son, who claimed the property and had assumed to mortgage it, the court was justified in holding that the solicitor was authorized to act.

Appeal from Bay; Collins, J. Submitted April 2, 1912. (Docket No. 4.) Decided May 31, 1912.

Bill by Charles Dehn against Carl O. Dehn to quiet title to real property. From a decree for complainant, defendant appeals. Affirmed.

*Stoddard & McMillan*, for complainant.

*Lee E. Joslyn*, for defendant.

STEERE, J. This is a suit between father and son to determine which is meant in a certain deed dated January 20, 1891, executed by Mathias Kober and wife, conveying to Charles Dehn lot 1 and the north half of lot 2, block 7, Tromble's addition to the village of Salzburg in Bay county, Mich. The parties to this suit each claim to be the Charles Dehn mentioned as grantee in said conveyance. The complainant, who is father of defendant, alleges in his bill of complaint that he has been in possession of said property, occupying the same as a homestead, since the time it was purchased in 1891; that he has never executed any conveyance of said premises, and now is, and has been at all times since its purchase, the owner thereof with absolute title in fee simple; that in July, 1900, defendant, without complainant's knowledge or consent, claiming to be the owner of said property, gave a mortgage upon the same for the sum of $700, which defendant afterwards paid, securing a discharge of said mortgage; that defendant claims to be the owner of said property, with right to sell and convey the same, and to dispossess and evict complainant; that said act of mortgaging, together with defendant's claim of ownership, creates a cloud upon complainant's title which pre-

vents him from selling or otherwise properly dealing with said property as his own; that complainant is 88 years of age and unable to support himself and has no property except said premises. He therefore prays the court to determine and decree that said conveyance from Mathias Kober and wife to Charles Dehn was a conveyance of said property to, and intended for, complainant.

Defendant filed an answer in the nature of a cross-bill. He admits the execution and recording of said deed to Charles Dehn, but denies that it conveyed said premises to complainant, alleging, on the contrary, that defendant is the grantee named and intended in said deed; that his name is Charles O. Dehn; that Carl is the German equivalent of Charles in English, and he has been called Carl for that reason. He admits having given a mortgage on said property for $700, which he subsequently paid, and asserts he had a perfect right, as owner, to do so; alleges that he has paid the taxes and insurance on said premises since their purchase, and made repairs and improvements thereon amounting to over $2,000; asserts that complainant neither paid nor furnished, directly or indirectly, any part of the purchase price paid for said property, nor contributed anything toward the repairs and improvements which have been made, but has been permitted by defendant to occupy the place, with other members of the family, free of rent, being also further assisted in his living expenses by defendant from time to time. Defendant therefore alleges that complainant's claim of ownership is a cloud on his title and asks for affirmative relief, praying, in his cross-bill, that complainant be required to quitclaim said property to him, or, if for any reason the court is not disposed to grant such relief, an accounting be ordered and defendant decreed to have a lien on said premises for the money he may be shown to have expended on said property. Complainant filed an answer to said crossbill, meeting the same by proper denials and allegations, and reasserting his ownership of said premises. From a decree adjudicating complainant to be the owner of said

property, and denying the prayer of defendant's cross-bill, the latter has appealed.

The issues presented by counsel to this court under the pleadings and proofs are:

(1) The identity of the Charles Dehn named as grantee in said conveyance,

(2) The right of defendant to a lien on said premises for moneys expended thereon in case he is not found to be the owner.

(3) The authority of complainant's counsel to institute this suit.

Complainant, accompanied by his wife and four sons, brothers of defendant, came from Germany to Salzburg, Mich., in 1888. The names and ages of the sons who came with him are: John, 30 years; Henry, 14 years; Frank, 10 years; and August, 6 years. Defendant, then 18 years of age, and next to the oldest of the boys, had come to America two years previous, and sent money to assist the family in joining him. When the family immigrated to America, the mother brought with her the proceeds of the sale of family property, disposed of before they left, variously stated by different members of the family as amounting to from $500 to $700. This she left with a sister in New York, and it was sent on to her later. Defendant testified that it amounted to $514, and was deposited by him in a bank in Bay City.

When the family arrived at their destination, defendant received them. Being the only one who could speak English, and somewhat acquainted with the ways of the country, he took the initiative, renting a house for them into which they moved and established a home. Thus united, they lived together as one family, apparently in harmony, co-operating and working together for several years. Complainant and the sons who were old enough to work found employment and turned their wages over to the mother, who handled the funds and acted as the family treasurer. She seemed to rely on defendant more than the others in business matters, owing, as one of the

sons testified, to his longer residence in the country, knowledge of the people, and ability to speak English. They were apparently frugal and industrious.    The mother handled the funds and managed their financial affairs with defendant's assistance.    He negotiated loans for her, and money in her hands was deposited in a bank in his name.    In 1891 the property in question was purchased for $550 and became the permanent home of the family. Since that time complainant has occupied the same continuously as a home, with his wife and children, until they died or were married and left.    For the last seven years Henry and his family had lived on the place with complainant and cared for him.    When it was purchased, the family had been in the country for nearly three years, living in a rented house.    The mother initiated and conducted the negotiations for purchase of a home from Mathias Kober and wife, who were also Germans and acquaintances.    Complainant's wife and Mathias Kober are both dead. · Mrs. Louisa Kober, wife of Mathias, and one of the grantors, testifies in part as follows:

"To whom did you sell it?

"*A.* To Mr. Dehn and his wife.

"*Q.* Which Mr. Dehn?

"*A.* The old Mr. Dehn.    I had all my dealings with the mother and none at all with the father.    The mother first came to see me, came to my home, and the old folks paid us the money.    *    *    *

"*Q.* The deed gives the name of the grantee as Charles Dehn.    Who did you understand Charles Dehn was?

"*A.* Why, the father of the boys.    We could not understand it any other way.    The mother came to us and done all the talking and made the bargain with us.    This here gentleman, Carl Dehn, did not never speak to us, and I don't think he ever did, not even the day we made out the papers; but we came on the east side to make out the papers.    I don't know that we spoke together then, only that he passed over the money, but business was all done with the parents, with the mother.    *    *    *    Mrs. Dehn, the old lady, was at home when the deed was made out, and when I came over to the east side to have the

deed made she stayed with my children so that I could get away."

As a legal presumption, in the absence of any illuminating evidence, complainant would be the Charles Dehn intended in the conveyance. If the father and son bore the same name, in the absence of any distinguishing designation the father is, *prima facie,* intended. 29 Cyc. p. 268.

In this case, as a matter of fact they did not bear the same name, though they may mean the same when interpreted. Defendant was always called Carl, and his name is Carl O. Dehn. He has since become a business man of some means and does his business in that name. Of 11 conveyances offered in evidence, to which he is a party, the only one in which his name appears as Charles Dehn is the mortgage he gave on the property in dispute. In all the others his given name is Carl, or Carl O. We think the testimony, taken as a whole, shows that the property was purchased by the mother as a home for the family and deeded to complainant, the husband and father, being paid for out of money brought from Germany, or the joint earnings of the family which she had received.

Defendant's claim of lien for expenditures on the premises is not tenable. That he paid the taxes and insurance upon the property and paid for certain improvements while living there, is admitted. Expenditures for repairs and improvements were also made by the other sons and by the parents. When the family moved upon the property in 1891, an addition and repairs to the house, costing $358, were paid for by John. Henry claims to have expended over $800 on the property. Defendant's claim amounts to over $2,000. There is a conflict of testimony as to this amount. That he was more capable in business, more prosperous, and contributed more than the others while they lived together, is indicated by the evidence. He made his home there with his parents until after the mother died in 1901. In 1902 he married and left.

The history of this family indicates convincingly that all the sons, while living in the family, contributed as they were able, not only sufficient to cover their own care and keep, but for support of the parents and betterment of the property which was the family home. Such contributions, made by sons while living at home with the parents, are impliedly gratuitous, in the absence of any agreement or understanding to the contrary, and create no lien.

It is true that an equitable lien may arise, in the absence of an express contract, under circumstances from which a contract is necessarily implied. 25 Cyc. p. 667. Such a lien may arise where a party innocently and in good faith, under a mistake as to the condition of the title, renders services, or makes improvements that are permanently beneficial to another. *Miller* v. *Pickens*, 26 Miss. 182; *Haggerty* v. *McCanna*, 25 N. J. Eq. 48. Defendant invokes this doctrine in support of his claim of lien. But his major claim in this case is not based on any mistake or honest misunderstanding as to the title to the property. He claims that he bought it and paid for it; that it was deeded to him; that he owned it and spent the money improving his own property. This is not a mistake from the consequences of which equity will grant relief. Failing in such claim, he cannot change front and establish a lien under an implied contract for expenditures made on property, the legal title and possession of which is in another. A court of equity cannot create a lien. It can only declare one where the testimony equitably establishes an implied contract. Liens can only be created by agreement, express or implied, or some fixed rule of law. *Bennett* v. *Nichols*, 12 Mich. 22; *Frost* v. *Atwood*, 73 Mich. 67 (41 N. W. 96, 16 Am. St. Rep. 560). There is nothing in the case at bar which favors the idea that defendant's expenditures created a lien on this land, because made innocently and in good faith, under an honest but mistaken belief that he was the owner.

The authority of complainant's solicitor to represent his alleged client is raised. As a general rule, this cannot be

questioned at the trial. 4 Cyc. p. 920; *Norberg* v. *Heineman*, 59 Mich. 210 (26 N W. 481). It is said by defendant's counsel that the authority of complainant's solicitor was not raised before for the reason that the facts were not known until the testimony of complainant was taken, which showed that he did not know this suit was begun and had never given any one any authority to commence it. This is based on the answers to certain questions asked complainant at the taking of his testimony in his home; he being physically unable to be present in court. His examination through an interpreter indicates clearly that he was old, feeble, forgetful, and somewhat childish, and did not have a very clear recollection of the facts and circumstances in connection with the subject-matter of the suit. He was nearly 90 years of age, unable to understand or speak English, and appears to have been confused and bewildered. He testified that the property was his; that he paid for it; that they all paid for it, that he had some money himself, and everybody gave their money for the purchase, all together; that it was all in one pile. As his examination progressed, he appears to have become more uncertain and confused, until most of his answers were that he did not remember, or a decided negative. He answered that he did not remember who paid the taxes and stated at one time that nobody paid them. As to the authority of his solicitor to act, he stated that he remembered making three crosses on a paper brought to him about this matter, but did not know the attorney who represented him, nor understand what the suit was. He was asked:

" Do you want to have something done to keep the property for yourself ?

"*A.* No—

" *The Interpreter:* He says the house belongs to him, that is all he knows about it."

It is the testimony from other sources that, learning of defendant's having mortgaged the property in question and subsequently offered the same for sale, complainant

became worried, anxious, and shed tears, while talking of it to others and expressing a desire to have something done to settle the question and preserve the property for himself; that his son Henry, who lived with and took care of him, looked after the business and engaged counsel who filed this bill in his behalf.

Caleb Snyder, a witness for complainant, testified that the old gentleman only spoke German, was very feeble, and it was hard to carry on conversation with him; that there were few people who could thoroughly understand him when he talked; that he acted as interpreter for the solicitor, Mr. De Foe, when they were conversing in regard to this suit and—

" The conversation at that time was all along this same line—beginning proceedings in the name of Charles Dehn against Carl O. Dehn. The old man said he wanted such proceedings commenced. The object of commencing the proceedings was to save his home."

Frederick W. De Foe, the solicitor for complainant, testified that he obtained all the preliminary information from complainant, Mr. Charles Dehn, himself, and, through Mr. Snyder, questioned him as to the ownership of the property and his knowledge as to whether or not Carl had ever made a claim of ownership to it, and as to the allegation with reference to a mortgage that defendant had placed upon the property; that he questioned him also as to his desires, and what he wished done under the circumstances, after which the bill of complaint was prepared in accordance with the instructions and desires disclosed to said attorney by complainant through Snyder, the interpreter.

After hearing the testimony of the parties, the court held that complainant's solicitor was authorized to act, saying:

"It would seem to me  *  *  *  that where an attorney and solicitor is consulted he would have a right to use his best judgment as to what was necessary to protect the interests of the party for whom he was consulting."

We think the testimony of complainant's solicitor that he had been consulted, and that complainant wished the suit commenced, was sufficient, under the circumstances disclosed, to invoke the discretion of the trial court.

The court in which the suit was begun is the proper tribunal to pass upon the question of authority of counsel when that question is raised. *Krause* v. *Hampton*, 11 Iowa, 457; *Newhart* v. *Wolfe*, 2 Penny. (Pa.) 295.

A careful review of the whole record in this suit leads us to the same conclusions arrived at by the learned circuit judge, and his decree is affirmed, with costs.

MOORE, C. J., and McALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.