## SUTHERLAND, Alien Property Custodian, v. INTERNATIONAL INS. CO. OF NEW YORK.

### No. 362.

Circuit Court of Appeals, Second Circuit.

July 28, 1930.

Charles J. Schuck, of Wheeling, W. Va. (Nathan Ottinger, of New York City, of counsel), for appellant.

Rumsey & Morgan, of New York City (David Rumsey and Henry N. Arnold, both of New York City, and Louis A. Johnson, of Clarksburg, W. Va., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The sole question involved in this appeal is whether the Alien Property Custodian may appear by a solicitor of his own selection, or whether a district attorney or the Attorney General must represent him. It is therefore not necessary to set out the bill at large except to say that it was based upon the rights of German enemies which the Custodian had seized, for certain sums alleged to be due by contract from a domestic insurance company to the Germans. The Custodian authorized the suit, appearing by a private solicitor. The defendant authorized and filed a counterclaim to which the plaintiff replied. The case being in this posture, the defendant moved to dismiss the bill for the reason stated above, and the judge granted the motion.

Section 485 of title 28 of the U. S. Code (28 USCA § 485), which had its origin in

the Act of September 24, 1789, provides that "it shall be the duty of every district attorney to prosecute, in his district * * * all civil actions in which the United States are concerned." This was enlarged in 1906 (title 5, U. S. Code, § 310 [5 USCA § 310]), to include the Attorney General, "any officer of the Department of Justice," or attorney specially designated by the Attorney General, who must be duly commissioned and take an oath of office (title 5, U. S. Code, § 315 [5 USCA § 315]). While this statute does not in terms forbid any officer of the United States to appear by a private attorney in a civil action, we understand the practice of the departments to have been uniform, or nearly so, not to do so, and the courts have several times said or decided that this was its intent. The Confiscation Cases, 7 Wall. 454, 19 L. Ed. 196, indeed involved only the question whether the Attorney General might, against the wishes of an informer, dismiss an appeal in a suit to confiscate confederate property under the Act of August 6, 1861 (12 Stat. 319), in which the informer had a half interest. However, the opinion announced obiter (page 457 of 7 Wall.) that it was the settled rule of United States courts to recognize no suits prosecuted in the name and for the benefit of the United States unless it was represented by a district attorney. While this is perhaps not conclusive, as it was not in any sense made the basis of the decision, it cannot be disregarded, even though the citations given as authority, except a dictum of Judge Betts in U. S. v. McAvoy, 4 Blatch. 418, Fed. Cas. No. 15,654, do not bear out the text. Moreover, Justice Livingstone so ruled in U. S. v. Morris, 1 Paine, 209, Fed. Cas. No. 15,816, and so did Justice Blatchford in U. S. ex rel. West v. Doughty, 7 Blatch. 424, Fed. Cas. No. 14,986. So far as we can find these are the only cases which have dealt with the question, for although U. S. v. Morris was affirmed in 10 Wheat. 246, 6 L. Ed. 314, the point was not discussed. In U. S. v. Griswold, 5 Sawy. 25, Fed. Cas. No. 15266, Judge Deady held that the section here in question did not apply to an action brought under section 232 of title 31 of the U. S. Code (31 USCA § 232). This was a qui tam action, well known in England, whence we imported it, which, though prosecuted in the name of the United States, was within the control of the informer. It was sued at his charge and he was subject to costs, his share in the recovery being deemed a sufficient inducement. It would have been inconsistent with this that he should have the service of the public pros-ecutor, and moreover the very language of the section makes it plain that he was not to have it, since otherwise there would be no meaning in the provision that he could not discontinue without the consent of the district attorney. The Alien Property Custodian is a public officer having no interest in the suit at bar; his position has no resemblance to that of a qui tam plaintiff.

■ While the authority is thus somewhat meagre, and the Supreme Court has never actually ruled upon it, the reasons are strong to take such a view. The government has provided legal officers, presumably competent, charged with the duty of protecting its rights in its courts. It has specifically authorized these to act, exacting from them compliance with the formalities required of a public officer, even when appointed by the Attorney General. Their authority extends to such proceedings as this (U. S. v. Smith, 158 U. S. 346, 352, 15 S. Ct. 846, 39 L. Ed. 1011; 8 Op. Attys. Gen. 399); the United States was "concerned" in this suit, even after Congress had returned eighty per cent. of the collection to the enemies. Had it been possible for the enemies to intervene under a statute giving them the standing of qui tam plaintiffs, they might indeed be entitled to their own attorney, but even then it would not affect the question as to whom the Alien Property Custodian must retain, if he appeared. Congress, having so provided for the prosecution of civil suits, can scarcely be supposed to have contemplated a possible duplication in legal personnel. The cost of this is one consideration, but far more important is the centering of responsibility for the conduct of public litigation. The Attorney General has powers of "general superintendence and direction" over district attorneys (title 5, U. S. Code, § 317 [5 USCA § 317]), and may directly intervene to "conduct and argue any case in any court of the United States" (title 5, U. S. Code, § 309 [5 USCA § 309]), including even proceedings before magistrates (title 5, U. S. Code, § 310 [5 USCA § 310]). Thus he may displace district attorneys in their own suits, dismiss or compromise them, institute those which they decline to press. No such system is capable of operation unless his powers are exclusive, or if the Departments may institute suits which he cannot control. His powers must be coextensive with his duties. And so, quite aside from the respectable authority that confirms our view, we should have had no doubt that no suit can be brought except the Attorney General, his subordinate, or a district attorney under his "superin-

tendence and direction," appears for the United States.

Against this the plaintiff urges that the statutes appointing the Alien Property Custodian have given him enlarged powers. We should in any case have to be well satisfied that Congress had intended to make an exception to the policy so indicated, but there is no color for doubt. Section 12 of the Trading with the Enemy Act (50 USCA Appendix, § 12) gives the Custodian the powers of a common law trustee, to which the President may add such others as he will. Perhaps the President could authorize him to appear by attorneys of his own selection, though that itself is doubtful. Be that as it may, President Wilson did the opposite in his order of May 31, 1918, in which he provided by executive order that "all litigation in which the United States or any Department * * * are engaged, shall be conducted under the supervision and control of the head of the Department of Justice." This order indeed ended six months after the termination of the war, but it serves to construe the executive orders especially regulating the Custodian on which the plaintiff relies (Executive Orders of July 16, 1918, and November 12, 1918), and which authorized him to "file and maintain * * * suits of all kinds, in or before any court" (section 1). Without this it is doubtful whether he would not have been obliged to sue in the name of the United States, but, regardless of this, the language must be read with the general order just quoted, which was to "concentrate the Government" (Act of May 20, 1918, 40 Stat. 556). "Supervision and control" must mean more than the power of regulation after suits have begun. "Control" at any rate involves their initiation as well as their subsequent conduct; it would be an idle power to allow those to be filed which the Attorney General could at once terminate. The reasonable intendment of the language can only be that the Department was to authorize all suits in limine, and that the Custodian was not to be exempt from the same authority which regulated all other Departments in this respect. Certainly these orders are too ambiguous to serve against the statute; nor should we so interpret them as to raise questions of their validity, any more than we should so treat a statute.

Section 4 of the same orders, which empowers the Custodian to appoint "attorneys," is of frequent occurrence in similar situations. It need not trouble us, for it clearly means no more than that the Custodian shall have legal assistance in the discharge of his duties. He could not possibly have carried on those duties without lawyers, any more than without "agents * * * bailees, depositaries and/or managers." The broad powers conferred upon him later in that section to prescribe for his assistants such duties as he chooses, is again to be read in the light of the general governmental structure of which they formed a part. We are dealing not with a system set up de novo, even though it was during a war. Indeed so far as any implications are pertinent at all, they make for consistency with the pre-existing status, rather than for its confusion.

While therefore there is no doubt in our mind that the suit when first filed was subject to dismissal because the plaintiff was not properly represented, it would, under most authorities, have been too late to raise the question after answer and at a hearing. The objection has generally been treated like incapacity to sue; its ground being that his attorney's lack of authority permits the plaintiff to play fast and loose with the defendant, holding him to the judgment if he wins, and repudiating it, if he loses. Courts have generally, however, insisted that the defendant must raise the point in limine; sometimes at the term at which process is served, and at any rate before answer. This in turn is because, if, being advised of his situation, the defendant is content with the hazard, he cannot later repudiate his acceptance. It is not necessary to do more than enumerate some of the many decisions which have so held, King of Spain v. Oliver, Fed. Cas. No. 7814; Rogers v. Crommelin, Fed. Cas. No. 12,009; Rouiller v. A. & B. Schuster Co. (D. C.) 212 F. 348; Cockran v. Leister, 2 Root (Conn.) 348; Spaulding v. Swift, 18 Vt. 214; Norwood v. Dodge, 215 Mass. 351, 102 N. E. 412 (by rule of court); Upham v. Bradley, 17 Me. 423 (semble); Lucas v. Bank of Georgia, 2 Stew. (Ala.) 147; Chamberlain, Miller & Co. v. Abbott, 152 Ala. 243, 44 So. 637; Noble et al. v. Bank of Kentucky, 3 A. K. Marsh. 262 (semble); Gianakaris v. Hines, 273 Pa. 21, 116 A. 524; State v. Edwards, 315 Mo. 209, 286 S. W. 25; Mercier v. Mercier, 2 Dall. (Pa.) 142, 1 L. Ed. 324; State v. Harris, 14 N. D. 501, 105 N. W. 621; Indiana, B. & W. Ry. Co. v. Maddy, 103 Ind. 200, 2 N. E. 574; Rowland v. Gardner, 69 N. C. 53. In Dehn v. Dehn, 170 Mich. 407, 136 N. W. 453, the rule was so far relaxed as to allow the point to be raised at trial, when the defendant first discovered it at that time. These cases with

one or two exceptions arose between private persons, where the general interest was not at stake. Certainly when the sovereign is a party other considerations may be pertinent, and it might well be held that the defendant cannot by inaction excuse a breach of law, or authorize a suit in the sovereign's name which he has forbidden. Yet the Supreme Court of New York, when made up of exceptionally learned and experienced judges, ignored any such distinction (People v. Denison, 17 Wend. 312, 314), and this was later followed by the General Term (People v. Lamb, 85 Hun, 171, 32 N. Y. S. 584).

We are not, however, called upon to decide this question because for us it has been authoritatively decided in Pueblo of Santa Rosa v. Fall, 273 U. S. 316, 47 S. Ct. 361, 71 L. Ed. 658. This suit was brought in the name of an Indian pueblo to enjoin the Secretary of the Interior from offering certain lands for public sale. The attorneys for the plaintiff were a firm of which one, Cates, had been a member when the bill was filed, and though he died pending the suit, nothing turned on that. Cates got his authority to appear from one, Hunter, who had in turn got it from an Indian representing himself as the "Captain" of the pueblo, by what purported to be an irrevocable power, accompanied by the conveyance of a half interest in the lands, whose title in the pueblo Hunter was to try to confirm. The defendant raised the question of the attorneys' lack of authority with his answer, and it was therefore in season under most of the decisions. Strictly speaking therefore, the decision of the Supreme Court did not involve the point before us, but the language used leaves us no alternative but to say that the court meant to base its decision squarely upon the ground that the objection is good at any time. The lower courts had dismissed the bill on the merits and were reversed, the Supreme Court dismissing it for lack of authority in the attorney, since the Indian "captain" himself had no power to represent the pueblo. The pueblo itself joined in the motion to dismiss, but Hunter's successor had still an interest and he wished to press the suit, though in its name. The language we rely on is this: "Whether, as matter of practice, the challenge to the authority of counsel was seasonably interposed," as the court had just said it was, "it is not important to decide, for in any event, the trial court, or this court, has power, at any stage of the case, to require an attorney, one of its officers, to show his authority to appear." Certainly it would be unseemly for us to chop or whittle at the deliberate declaration of the court made under these circumstances; if the rule is to be changed, that court alone may properly change it.

The decree appealed from dismissed the bill on the ground that the plaintiff was not properly represented. Probably this was enough to save it from becoming an estoppel in another suit. Out of abundant caution, however, it should be modified to read as follows: "Ordered, adjudged and decreed that the bill of complaint and counterclaim be and the same hereby are dismissed without costs on the ground that the suit was brought by solicitors without authority, but without prejudice to the bringing of any other suit hereafter by and with the authority of the proper officials."

Decree reversed and cause remanded for further proceedings in conformity with the foregoing opinion.